## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**SUKHBIR SINGH TOOR**
63433 Gold Nugget Rd
Joshua Tree, CA 92252

**JASKIRAT SINGH**
12222 Rothmoore Ln
Houston, TX 77066

**AEKASH SINGH**
215 Winding Way
San Carlos, CA 94070

**MILAAP SINGH CHAHAL**
129 SW 310th Pl
Federal Way, WA 98003

      *Plaintiffs*,

  v.

**DAVID H. BERGER**, in his official capacity
as the Commandant of the Marine Corps,
Headquarters, U.S. Marine Corps
3000 Marine Corps Pentagon, Room 4E468
Washington, DC 20350-3000

**LLOYD JAMES AUSTIN III**, in his official
capacity as Secretary of the U.S. Department
of Defense,
1000 Defense Pentagon
Washington, DC 20301

**U.S. DEPARTMENT OF DEFENSE**
1400 Defense Pentagon
Washington, DC 20301

**CARLOS DEL TORO**, in his official
capacity as Secretary of the U.S. Navy,
Naval Litigation Office
720 Kennon St., SE, Room 233
Washington, DC 20374-5013

Civil Action No. 1:22-cv-01004

**VERIFIED COMPLAINT**
(Jury Requested)

**U.S. DEPARTMENT OF THE NAVY**
Naval Litigation Office
720 Kennon St., SE, Room 233
Washington, DC 20374-5013

**ERIC M. SMITH,** in his official capacity as
Assistant Commandant of the Marine Corps,

Headquarters, U.S. Marine Corps
3000 Marine Corps Pentagon, Room 4E468
Washington, DC 20350-3000

**DAVID A. OTTIGNON,** in his official
capacity as Deputy Commandant of
Manpower and Reserve Affairs,
Headquarters, U.S. Marine Corps
3000 Marine Corps Pentagon, Room 4E468
Washington, DC 20350-3000

     *Defendants.*

Eric S. Baxter (D.C. Bar No. 479221)
Daniel Blomberg (D.C. Bar No. 1032624)
Diana Verm Thomson (D.C. Bar No. 1811222)
Chris Pagliarella (D.C. Bar No. 273493)
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC, 20006
(202) 955-0095 PHONE
(202) 955-0090 FAX
*ebaxter@becketlaw.org*

Amandeep S. Sidhu (D.C. Bar No. 978142)
Winston & Strawn LLP
1901 L St., NW
Washington, DC, 20036-3506
(202) 282-5828 PHONE
(202) 282-5100 FAX
*asidhu@winston.com*

Amrith Kaur Aakre (Admission *pro hac vice* pending)
Giselle Klapper (Admission *pro hac vice* pending)
The Sikh Coalition
50 Broad St., Suite 504
New York City, New York 10004
(847) 786-5839 PHONE

*amrith@sikhcoalition.org*
*giselle@sikhcoalition.org*

**Counsel for All Plaintiffs**

Brian W. Song (Admission *pro hac vice* pending)
Matthew K. Cowherd (D.C. Bar 229924)
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201
*bsong@bakerlaw.com*
*mcowherd@bakerlaw.com*

**Counsel for Plaintiff Jaskirat Singh**

## NATURE OF THE ACTION

1.   Plaintiffs Sukhbir Singh Toor, Jaskirat Singh, Aekash Singh, and Milaap Singh Chahal want nothing more than to serve their country in the United States Marine Corps ("Marine Corps") without having to abandon their faith as devout Sikh Americans. Plaintiffs have each requested accommodations that would allow them to practice their faith while in service to the Marine Corps and the nation.

2.   In response to those requests, Defendants say "sometimes," but with exceptions and caveats that render the accommodations meaningless. The accommodations would require Plaintiffs to cast aside their faith during the entirety of recruit training and when serving in "combat zones" (broadly defined to include any location where a Marine is entitled to Imminent Danger Pay).

3.   As for Marine Corps Recruit Training (*i.e.*, basic training or boot camp), Defendants claim that Plaintiffs must abandon their religious faith because the Marine Corps has a compelling interest in "uniformity," which they say is "at one of its highest points" during the opening phase of a Marine's career. Ex. A at ¶ 2(d). Uniformity, they explain, is "a key component" of "breaking down individuality and training recruits to think of their team first." *Id.*

4.   Yet, the Marine Corps has recently relaxed other grooming standards specifically to increase *diversity* in the military ranks. As of January 2022, for example, new recruits can now receive permanent beard accommodations for medical reasons, and they can wear full-sleeve tattoos and various new hairstyles, including during recruit training.

5.   It is perverse to claim that respecting "the individual desires of Marines" to have full-body tattoos (hands, face, and neck only excepted), Ex. B, is consistent with the Marine Corps' image, but that respecting Plaintiffs' desires to be faithful to God is somehow antithetical to the idea of cohesiveness and uniformity within the service.

6.   Assertions that recruits can prove their fidelity to country and comrades only by betraying sacred promises they have made to God are precisely what the First Amendment's Religion Clauses were designed to avert.

7.   As this Court has noted, such assertions are also illogical because requests for religious accommodation generally do "not stem from any lack of self-control, dedication, or attention to detail." *Singh v. McHugh*, 185 F. Supp. 3d 201, 227 (D.D.C. 2016). They do not "signal a rebellious streak or reflect a lack of impulse control or discipline." *Id.* To the contrary, they reflect an ability to "faithfully adhere[] to the strict dictates" of a higher command, even in the most trying circumstances. *Id*.

8.   Nor does granting a religious accommodation mean that a recruit's training would be devoid of uniformity. Allowing the religious beards and turbans at issue here would impair uniformity no more than medical beards, individual tattoos, diverse hairstyles allowed for women, or the diversity in height, build, skin color, and appearance that is unavoidable among any class of recruits. While uniformity certainly has a role, the Marine Corps is not a clone army and—in fact— would not exist without diverse recruits.

9.   As for combat zones, Defendants assert a compelling interest in ensuring safety from potential chemical, biological, radiological, and nuclear (CBRN) agents, which they posit might be compromised by a beard in the event a Marine must don a gas mask.

10. But the Marine Corps' conduct again belies its claims. It just recently *expanded* protection for Marines with *pseudofolliculitis barbae* (PFB), a skin condition prevalent among African-American men, giving affected Marines shaving waivers for indefinite periods of time. These Marines face no limitations going into "combat zones." Neither do Marines with beards worn during special operations.



*Marine Corps special-operations staff sergeant in Afghanistan*
*Photo Credit: Michael M. Phillips/The Wall Street Journal*

11. Moreover, being in a "combat zone" is not an accurate indicator of actual CBRN risk. Here, the Marine Corps uses "combat zone" as a general term that includes anywhere a Marine is entitled to "hostile-fire" or "imminent-danger" pay. Ex. C. This includes 39 countries such as Algeria, Israel, Turkey, and Uganda, in addition to Guantanamo Bay.[1]

12. Yet clean-shaven Marines in these locations are not even required to keep their gas masks on their person or within a certain distance unless the threat of chemical exposure reaches a certain level, showing that the Marine Corps has more specific ways of measuring threats than using the generic "combat zone" category.[2]

---

[1]   *Imminent Danger Pay*, DoD FMR Vol. 7A, Ch. 10, https://perma.cc/M5MR-3E62; *see also* DoD 7000.14-R, at 10-7, https://perma.cc/6CUS-P5WV.

[2]   The U.S. military uses Mission-Oriented Protective Posture (MOPP) designations to measure chemical threats. The only levels where servicemembers must actually wear gas masks are MOPP 3 and 4, where an actual threat is present. AFVA 32-4012, Mission-Oriented Protective Postures (MOPP), https://perma.cc/XED5-592H.

13. Nor is this Defendants' first opportunity to consider the issue. The U.S. Army now has a five-year history of fully accommodating Sikh soldiers. The U.S. Air Force followed suit, welcoming Sikhs with their articles of faith for several years now. And the U.S. Navy recently granted similar religious accommodations for Jewish and Muslim sailors pending the outcome of a related lawsuit. None of these other branches have imposed limitations for recruit training or broadly defined combat zones.



*U.S. Army Corporal Simran Preet Singh Lamba carrying the guidon for his platoon during Basic Combat Training graduation*
*Photo Credit: Susanne Kappler/U.S. Army*

14. Further, the U.S. Navy's uniform and grooming policies that allow for beards and religious head coverings also apply to the U.S. Naval Academy (USNA), a prestigious institution which trains both sailors and Marines. Ex. D (BUPERSINST 1730.11). USNA midshipmen graduate as commissioned officers and do not have to declare which branch they will ultimately select to join until their third or fourth year.[3] The fact that Marines may attend and graduate from USNA while wearing religious head coverings and beards without it impacting their uniformity or cohesion with

---

[3]   USNA, *Marine Selection* (Dec. 13, 2021), https://perma.cc/VY8N-TC5F.

their fellow graduates while Plaintiffs are told they cannot attend basic recruit training for those very reasons further belies the Marine Corps' claims.

15. Additionally, militaries around the world, including key U.S. allies such as the United Kingdom, Canada, Israel, and Australia, have long found ways to accommodate observant Sikhs without compromising mission readiness.

16. Absent a compelling government interest, the First Amendment and Religious Freedom Restoration Act (RFRA) require the U.S. Marine Corps to accommodate Plaintiffs' religious exercise in the least restrictive way possible. Further, the Marine Corps' own actions show that Defendants have no real reason to force Plaintiffs to abandon their core religious beliefs just to participate in recruit training or just because they are deployed to any area across five continents designated for special pay.

17. Plaintiffs thus are entitled to complete relief from this religious discrimination.

## FACTUAL BACKGROUND

<u>The Plaintiffs</u>

18. Plaintiff Sukhbir Singh Toor, a devout Sikh and a Captain in the U.S. Marine Corps, seeks relief in the form of a lasting religious accommodation that allows him to exercise his sincerely held religious beliefs by wearing a beard and turban, as mandated by his faith, throughout his military service.

19. Captain Toor has faithfully served in the Marine Corps since 2017, initially making the difficult choice to cut his hair and shave his beard so that he could serve his country, since his recruiter told him the Marine Corps would not allow accommodations for his hair, beard, and turban. After being selected for promotion to Captain, and at the same time he was becoming a father, he asked the Marine Corps in March 2021 to allow him to exercise his faith while continuing to serve, allowing him both to live his own faith fully and to model that faith for his daughter. Ex. E.

20. When Capt Toor initially sought a religious accommodation, the Marine Corps responded in June 2021 with a highly restrictive, partial accommodation that essentially amounted to a denial

5

of his request to maintain his faith while serving as a Marine. It granted him approval to maintain unshorn hair, but forbade him from wearing a turban whenever "forward deployed," "assigned to lead an artillery unit or fire support team," or serving in "ceremonial roles." And it ostensibly allowed him to maintain his beard, but only when neither deployed nor "subject to deployment on short notice." Ex. F.

21. Capt Toor currently serves as a Field Artillery Officer with 3rd Battalion, 11th Marines, at Marine Corps Air-Ground Combat Center Twentynine Palms, California.

22. In the Marine Corps, Field Artillery is a Ground Combat Military Occupational Specialty. The mission of artillery is to furnish close and continuous fire support by neutralizing, destroying or suppressing targets that threaten the success of the supported unit.

23. Capt Toor appealed this decision, requesting an accommodation that actually met his religious needs. Ex. G. Defendants responded on August 25, 2021. Ex. H. The revised accommodation was broader, but still prevented him from wearing a turban or *patka* when serving in ceremonial roles. It also prevented him from maintaining a beard while in ceremonial roles or when deployed and receiving hostile-fire or imminent-danger pay.

24. Capt Toor again appealed, asking that his accommodation apply when (1) he is assigned to a ceremonial unit, and (2) he is deployed and receiving hostile-fire or imminent-danger pay (absent threat of actual exposure to toxic CBRN agents). Ex. I.

25. Defendants responded on January 21, 2022, abandoning the limitations on serving in ceremonial roles, but upholding the limitations on serving when receiving hostile-fire or imminent-danger pay, which the new letter describes as "combat zones." Ex. C.

26. Upon information and belief, while not a requirement for advancement, service in a "combat zone" is a career differentiator for a Field Artillery Officer.

27. The other Plaintiffs—Milaap Singh Chahal, Jaskirat Singh, and Aekash Singh—are prospective Marines who share a strong desire to serve their country and have become qualified applicants for accession into the Marine Corps through the Delayed Entry Program.

28. They are fully qualified to begin recruit training, having passed the Initial Strength Test and the Armed Service Vocational Aptitude Battery (ASVAB) test and having been accepted into the Marine Corps pending resolution of their request for a religious accommodation.

29. The Delayed Entry Program typically allows recruits to postpone recruit training for 365 days, and in some circumstances 410 days.[4] For all three Plaintiffs seeking to join the Marines, these timelines may run out absent this Court's intervention. Indeed, Plaintiff Jaskirat Singh's Delayed Entry Program contract is set to expire on April 30, 2022, necessitating emergency relief.

30. Like Capt Toor, Plaintiffs Milaap Singh Chahal, Jaskirat Singh, and Aekash Singh are devout Sikhs obligated by their faith to maintain unshorn hair and a beard and to wear a turban or *patka* as well as other religious articles.

31. Plaintiff Milaap Singh Chahal first sought a religious accommodation in March 2021. His request was granted in part and denied in part. It was denied in its entirety for the course of his recruit or "basic" training. Ex. J.

32. Regarding his service post-training, he received a partial accommodation, but it still requires removal of his beard and turban when serving in ceremonial roles, shaving his beard when under deployment and receiving hostile-fire or imminent-danger pay, and removing his kirpan— a small, ceremonial blade—when entering certain federal buildings. This is despite the fact that kirpans are permitted in most federal buildings pursuant to Federal Protective Service policy.[5] His appeal, filed October 21, 2021, is still awaiting a response even though the Marine Corps is obligated by its own regulations to forward his request up the chain of command within 30 days and issue a response within 60 days. Ex. K; Ex. L. A total of 172 days have passed with no response.

---

[4]    Marines, *Delayed Entry Program*, https://perma.cc/9UTF-CFY9.

[5]    Department of Homeland Security, *Prohibited Items Program*, https://perma.cc/VH3A-ZCE2.

33. In November 2021, Plaintiff Jaskirat Singh similarly requested a religious accommodation to maintain his unshorn hair and beard, to wear his turban, and to carry other religious articles throughout his service, including during recruit training. Ex. M.

34. The Marine Corps denied his request for *any* accommodation during recruit training, requiring him to shave, cut his hair, and remove his religious articles in order to join. Ex. A. He timely filed an appeal on February 21, 2022. Ex. N.

35. In March 2021, Plaintiff Aekash Singh requested a religious accommodation to maintain his unshorn hair and beard, to wear his turban, and to carry other religious articles throughout his service, including during recruit training. Ex. O.

36. In October 2021, after over 7 months of Aekash's counsel consistently attempting to learn the status of his request, counsel was told that he needed to start the religious accommodation process over from the beginning. Ex. P.

37. Nearly a year after his original request, in February 2022, the Marine Corps issued a response denying Aekash *any* religious accommodations during recruit training. Ex. Q. Thus, Aekash must shave, cut his hair, and remove his religious articles in order to join the Marine Corps. He timely filed an appeal on March 8, 2022. Ex. R.

38. As to these three Plaintiffs, concerning the denial of their religious accommodations during recruit training, Defendants have cited only a need for uniformity as the reason for the limitations imposed on their religious accommodations. Ex. A (Jaskirat Singh); Ex. J (Milaap Singh Chahal); Ex. Q (Aekash Singh).

<u>Exceptions to Uniformity</u>

39. At any given time, Marines with certain skin conditions can request permission not to shave their beards for medical reasons. Ex. S (MCO 6310.1C) (describing medical accommodation process since 2012 for Marines with *pseudofolliculitis barbae*).

40. On January 31, 2022, the Marine Corps significantly expanded its exemption policy for Marines with beards for medical conditions, such as *pseudofolliculitis barbae*—a painful facial

condition affecting roughly 60% of African-American men that is inflamed by shaving. Ex. T (announcing update to medical exemption policy).

41. Medical officers now have unfettered authorization to grant permanent exemptions to Marines with medical conditions. The new policy also provides that Marines are no longer required to carry a copy of their medical waiver on their person, and that they can no longer be separated or denied reenlistment because of ongoing medical conditions that prevent them from shaving. *Id.*

42. The Navy announced similar policy updates on March 22, 2022, expanding access to medical no-shave waivers, removing the requirement to carry them on the person, and removing the option of administrative separation for sailors whose treatments are unsuccessful. Ex. U.

43. The Marine Corps also recently updated their grooming regulations to allow for full-sleeve tattoos, Ex. B, and diverse hairstyles for women, including locks, braids, and twists, with the goal of reducing barriers to entry and aiding in recruitment and retention of members of diverse communities. Ex. V at 1-15-1-17.

44. On March 23, 2022, the Marines released yet another grooming update, allowing fingernail polish and updated maternity options for female Marines, extending some limitations on hair length, and allowing male Marines to adjust their hairlines and wear helmet caps beneath their helmets. Ex. W. These changes are designed to "promote a culture of inclusion while maintaining a high level of professionalism."[6]

45. And in a related memo, Defendant Del Toro emphasized that "it is [the Navy's and Marine Corps'] critical imperative to foster and sustain a diverse and inclusive culture that promotes the productivity, innovation, and trust that unleashes the full capacity of all our people." Ex. X.

46. Despite these practices, Defendants have recently doubled down on the position that there can be *no* full religious accommodations for Marines, because beards and religious articles offend the "uniformity" that the Marine Corps claims is critical to mission accomplishment and would pose a safety risk in any "combat zone," a term it defines broadly.

---

[6]   *Updated Uniform Regulations per MARADMIN 134/22*, Facebook (Mar. 23, 2022), https://perma.cc/3EX8-3FCL.

47. For Capt Toor, being forced to shave his beard when deployed and receiving hostile-file or imminent-danger pay would compel him to violate his religious beliefs or face harsh penalties for maintaining his religious practice. Under Article 92 of the Uniform Code of Military Justice, these penalties could include dishonorable discharge, forfeiture of all pay and allowances, and confinement for two years.

48. For the three Plaintiffs who are qualified applicants, the Marine Corps' failure to accommodate their religious beliefs puts them to an unconstitutional choice: compromise and desecrate their religion by shaving, cutting their hair, and removing their religious articles, or be denied entry to the Marine Corps despite otherwise being fully qualified.

<u>Failure to Satisfy Strict Scrutiny</u>

49. Defendants should know that their disregard of Plaintiffs' religious obligations is unlawful. In this context, the First Amendment's Free Exercise Clause and the Religious Freedom Restoration Act of 1993 ("RFRA") both forbid Defendants from burdening Marines' sincere religious exercise absent a compelling governmental interest that cannot be met by some means less restrictive than forced shaves and the removal of sacred garb. *See Tandon v. Newsom,* 141 S. Ct. 1294 (2021); U.S. Const. amend. I; 42 U.S.C. § 2000bb, *et seq*.

50. And regulations of the Department of Defense and the Marine Corps each separately impose the same obligation. Ex. Y, Dep't of Defense Instruction 1300.17 ¶ 1.2(e) (as updated September 1, 2020) (hereinafter "Defense Instr."); Ex. L, MCO 1730.9 (July 12, 2021).

51. Defendants cannot possibly demonstrate a compelling government interest in requiring Plaintiffs to shave when they allow beards for a variety of other reasons, as well as other departures from strict uniformity, and have done so for decades.

52. Further, the fact that the U.S. Army and U.S. Air Force both allow religious beards further belies any supposedly compelling reason Defendants may assert for suppressing Plaintiffs' religious exercise.

53. The allowance for religious beards by militaries around the world, including in the United Kingdom, Canada, Israel, Australia, New Zealand, and India, as well as by police and fire departments throughout the United States, further undermines Defendants' claims.

54.   Nor can Defendants show that forced shaves are the least restrictive means of resolving their alleged concerns. A range of alternative technologies can help accommodate religious beards, including under-mask beard bands tied using the *Singh Tattha* method. Ex. Z. Other alternatives include synthetic skin hoods, as patented by former Canadian Defense Minister Harjit Sajjan, and non-flammable beard gels used to create airtight seals.

55. Defendants have not shown that any of these alternative technologies would be impracticable ways of accommodating Plaintiffs' religious practice.

56. Defendants bear—and cannot carry—the burden to show that the approach taken by other branches of the U.S. military, by militaries worldwide, and by police and fire departments across the nation is not viable.

57. Defendants' own decades-long policies and practices prove that they have no compelling interest in forcing Plaintiffs to shave or abandon their religious items now. They should thus be enjoined immediately—for both the pendency of this lawsuit and throughout their careers.

## JURISDICTION AND VENUE

58. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1361.

59. Venue lies in this district pursuant to 28 U.S.C. § 1391(e)(1).

## IDENTIFICATION OF PARTIES

60. Plaintiff Capt Sukhbir Singh Toor is a devout Sikh and a Member of the United States Marine Corps, currently stationed at Marine Corps Air-Ground Combat Center Twentynine Palms, CA.

61. Plaintiff Aekash Singh is a devout Sikh and a qualified applicant for accession into the U.S. Marine Corps.

62. Plaintiff Milaap Singh Chahal is a devout Sikh and a qualified applicant for accession into the U.S. Marine Corps.

63. Plaintiff Jaskirat Singh is a devout Sikh and a qualified applicant for accession into the U.S. Marine Corps. He already has a signed contract with the Marines that requires him to join by April 30, 2022, or otherwise face administrative discharge.

64. Defendants are appointed officials of the United States government and United States governmental agencies responsible for the U.S. Marine Corps' grooming policies.

65. Defendant Lloyd James Austin III is the Secretary of the United States Department of Defense. In this capacity, he has responsibility for the operation and management of the United States military, including each military department and military service branch. Secretary Austin is sued in his official capacity only.

66. Defendant United States Department of Defense is an executive agency of the United States government and is responsible for the maintenance of the United States military.

67. Defendant General David H. Berger is the Commandant of the Marine Corps, and is responsible for the operation and management of the U.S. Marine Corps. General Berger is sued in his official capacity only.

68. Defendant Carlos Del Toro is the Secretary of the Department of the Navy and is responsible for the operation and management of the U.S. Navy and Marine Corps. Secretary Del Toro is sued in his official capacity only.

69. Defendant Department of the Navy is a Department of the United States military and is responsible for the promulgation and administration of the grooming policies and regulations of the U.S. Marine Corps.

70. Defendant General Eric M. Smith is the Assistant Commandant of the Marine Corps. In this capacity, he has responsibility for religious accommodations in the Marine Corps. He handled the latest response to Capt Toor's appeal. General Smith is sued in his official capacity only.

71. Defendant Lieutenant General David A. Ottignon is the Deputy Commandant for Manpower & Reserve Affairs of the U.S. Marine Corps. In this capacity, he handled the response to the original requests of Plaintiffs Capt Toor and Chahal and will likely handle the response for

12

Plaintiffs Aekash Singh and Jaskirat Singh as well. LtGen Ottignon is sued in his official capacity only.

## FACTUAL ALLEGATIONS

Plaintiffs' Sikh Religious Beliefs

72. Plaintiffs Capt Toor, Aekash Singh, Milaap Singh Chahal, and Jaskirat Singh are all devout Sikhs that desire to serve in the Marine Corps without having to compromise their sincerely held religious beliefs.

73. Sikhism is a monotheistic religion that originated in the fifteenth century in the Punjab region of South Asia. The founder of the Sikh faith, Guru Nanak, was born in 1469 in Punjab, India.

74. While relatively young compared to other major world religions, it is one of the world's largest faith traditions with nearly 25 million adherents.[7]

75. There are approximately 700,000 Sikhs in the United States.[8]

76. The Sikh religion is monotheistic, believing in one God that is all loving, all pervading, and eternal. This God of love is obtained through grace and sought by service to mankind.

77. Guru Nanak rejected the caste system and declared all human beings, including women, to be equal in rights, responsibilities, and ability to reach God. He taught that God was universal to all—not limited to any religion, nation, race, color, or gender—and emphasized an individual's direct relationship with God.

78. Consistent with the teachings of the Sikh gurus, Sikhs wear external articles of faith to bind them to the beliefs of the religion. Unlike some other faiths, where only clergy maintain religious articles on their person, all Sikhs are required to wear external articles of faith.

79. These articles of faith include:

---

[7]  *See The Global Religious Landscape: A Report on the Size and Distribution of the World's Major Religious Groups as of 2010*, The Pew Forum on Religion and Public Life, 9 n.1 (2012), https://perma.cc/L9L7-S6JA.

[8]  *Sikhism*, WorldAtlas (Nov. 4, 2021), https://perma.cc/A3FZ-LLFE.

(a) *Kesh* (hair), which is maintained unshorn—including facial and body hair—because keeping it in a natural state is regarded as living in harmony with the will of God. Observant Sikh men, as well as some Sikh women, cover their unshorn *kesh* with the turban, which is worn out of love and as a mark of commitment to the faith.

(b) The *kanga*, a small wooden comb worn in a Sikh's hair, which serves as a constant reminder that Sikhs must remain outwardly and inwardly clean and should be socially engaged and never practice asceticism.

(c) The *kara*, an iron or steel bracelet, which reminds a Sikh that he or she is a servant of God and should not take any action that may bring shame or disgrace.

(d) The *kacchera*, a special, boxer-style undershort, which signifies high moral character and obligates a Sikh to moral restraint and conjugal fidelity.

(e) The *kirpan*, which resembles a small knife and obligates a Sikh to the highest ideals of generosity, compassion, and service to humanity.

These articles distinguish a Sikh from others and have deep spiritual significance.

80. Maintaining uncut hair (including facial hair) is an essential part of the Sikh way of life.

81. Guru Nanak started the practice, regarding it as living in harmony with God's will. The Sikh Code of Conduct, called the *Rehat Maryada*, outlines the requirements for practicing the Sikh way of life.[9] All Sikhs must follow the guidelines set forth in this document.

82. The *Rehat Maryada* explicitly instructs that if you are a Sikh, you must "[h]ave, on your person, all the time . . . the *Keshas* (unshorn hair)."[10] This document prohibits the removal of hair from the body as one of four major taboos. One of the other taboos on this list is adultery. Accordingly, the fact that cutting one's hair is a moral transgression as serious as committing adultery speaks to the immense significance of uncut hair in the Sikh religion.

---

[9]   *Sikh Rehat Maryada in English*, Shiromani Gurdwara Parbandhak Committee, https://perma.cc/ZQ5B-MKJL.

[10]   *Id.* at Article XXIV(p).

83. The *Rehat Maryada* also mandates that Sikhs wear a turban which must always cover a Sikh's head. The turban reminds a Sikh of his or her duty to maintain and uphold the core beliefs and tenets of the Sikh faith, which include working hard, conducting oneself with honesty, sharing with the needy, and promoting equality and justice for all. When a Sikh ties a turban, the turban ceases to be simply a piece of cloth and becomes one and the same with the Sikh's head.

84. Historically, uncut hair and turbans have been central features of the Sikh identity. For example, in the 18th century, Sikhs in South Asia were persecuted and forced to convert from their religion by the dominant leaders in the region. The method of forcing conversions was to remove a Sikh's turban and cut off their hair.

85. As resistance to such forced conversions, many Sikhs chose death over having their turbans removed and hair shorn.

86. Since then, denying a Sikh the right to wear a turban and maintain unshorn hair has symbolized denying that person the right to belong to the Sikh faith, and this is perceived as the most humiliating and hurtful physical injury that can be inflicted upon a Sikh.

Unique Challenges for Sikh Servicemembers

87. Since the terrorist attacks on September 11, 2001, serving in the U.S. military has become more difficult for Sikhs and Muslims, partly because many feel compelled to keep their faith hidden "to avoid the judgment of peers" and "harassment."[11] Sikhs are often "perceived to be a Muslim due to [their] cultural garb."[12] This pressure they face to either keep their religious identity secret or serve as "apologists for the actions of extremist groups whose members call themselves Muslim but whom most Muslims in America see as enemies of their religion" places additional strain on these servicemembers' mental health and wellbeing.[13]

---

[11]   Shareda Hosein (Association of Muslim Chaplains), *Muslims in the U.S. Military: Moral Injury and Eroding Rights*, Pastoral Psychology (2019) 68: 77-92 at 86, 89, https://perma.cc/94Y6-2CHZ.

[12]   *Id.* at 81; *see Combating Religious Discrimination Today: Final Report*, U.S. Dep't of Justice (July 2016) at 7, 20, https://perma.cc/BV8V-5S2L.

[13]   Hosein, *Muslims in the U.S. Military*, at 83.

88. Without religious accommodations, servicemembers "pay a higher price psychologically due to not being able to freely declare their full identity, perhaps in terms of religious struggles generated by not being able to publicly integrate their religious faith into their military service."[14]

89. Granting religious accommodations also boosts morale and fosters diversity, which U.S. military leaders have recognized as a strength, and it would contribute to good order and discipline rather than detracting from those interests. Indeed, "studies suggest that people who practice their religion have higher levels of wellbeing."[15]

90. Allowing beards for religious reasons would also expand recruitment opportunities to more diverse communities whose members may otherwise be unable or unlikely to serve, including Sikh Americans, Muslims, and Orthodox Jewish communities.

<u>Capt Toor's Commitment to the Sikh Religion</u>

91. Plaintiff Capt Sukhbir Toor is a devout Sikh.

92. Capt Toor grew up in a religious family of Indian immigrants. Every Sunday, Capt Toor and his family attended Gurdwara (the Sikh house of worship). Capt Toor's father provided him an example of the Sikh faith, and wore a beard, turban, and other articles of the faith (including *kara* and *kirpan*).

93. Capt Toor also attended a Sikh school while living in Canada.

94. For 24 years prior to entering the Marine Corps, Capt Toor never removed his *kara*—a steel bracelet that reminded him that he is a servant of God and should not take any action that may bring shame or disgrace.

95. In accordance with his sincere religious beliefs, Capt Toor does not consume tobacco or alcohol.

---

[14]   Hosein, *Muslims in the U.S. Military*, at 79.

[15]   *Id.* at 89 (quoting Wahiba Abu-Ras & Shareda Hosein, *Understanding resiliency through vulnerability: Cultural meaning and religious practice among Muslim military personnel. Psychology of Religion and Spirituality,* (2015) 7(3), 179-91, at 181).

96. Further, as a faithful Sikh, Capt Toor believes that his faith obligates him to maintain an unshorn beard and wear a turban.

97. Growing up in the wake of the September 11, 2001 terrorist attacks, Capt Toor knew that many Americans wrongly associated Sikhs with dangerous religious fanatics. He entered the Marine Corps in the hopes that his military service would help change that mistaken stereotype. He also wanted to give back to his country out of gratitude for the First Amendment freedoms and other benefits he enjoys as an American.

Capt Toor's Military Service

98. Capt Toor serves as a Captain in the U.S. Marine Corps.

99. His primary occupation is Artillery Officer in the 3rd Battalion, 11th Marines. In that capacity, Capt Toor, among other things, leads Marines in tactics, gunnery, gun-line drill, communications, maintenance, transportation, and logistics. He is currently stationed at Marine Corps Air-Ground Combat Center Twentynine Palms, CA.

100.  He has served with courage and distinction at all times and has been awarded the Global War on Terrorism Service Medal, the National Defense Service medal, and the Sea Service Deployment ribbon. He has been told that he will soon receive a Navy & Marine Corps Achievement medal for superior performance.

Capt Toor's Efforts to Obtain an Accommodation

101.  As an observant Sikh, Capt Toor arrived at his unit wearing his *kara*, his religious practice of 24 years. Capt Toor also wanted to wear his beard and turban in accordance with his religious beliefs.

102.  In anticipation of his desire to join the Marine Corps, but in recognition of the fact that he would not be able to maintain his Sikh articles of faith to do so, Capt Toor made the difficult decision to cut his hair and shave his beard. When he joined the Marine Corps in 2017, he was not authorized to wear his *kara* either.

103.  For Capt Toor, his decision to remove his Sikh articles of faith was shameful, humiliating, and harmful to his conscience.

17

104. While Capt Toor did not believe it was possible for him to request a religious accommodation to maintain unshorn hair and beard and wear a turban, once he completed his training in Officer Candidate School, Basic School, and his Marine Artillery Officer Basic Course in March 2019, he immediately sought an accommodation to keep wearing the *kara* when he arrived at his unit.

105. Capt Toor completed the necessary paperwork with the chaplain in May 2019, and his request was approved by the battalion commander and then by the regiment commander.

106. The First Marine Division Commanding General and the Marine Expeditionary Force Commanding General, however, denied Capt Toor's accommodation request.

107. At that point, Capt Toor realized that pursuing a full religious accommodation could hurt his career designation, a highly competitive process used by the Marine Corps to select the most qualified officers for promotion opportunities beyond their initial active service obligation. Capt Toor thus decided not to seek accommodation for his beard and turban until he received his career designation.

108. When Capt Toor was ultimately selected for Career Designation on March 1, 2021, he made his second accommodation request for a beard and turban the same day. Ex. E.

109. On June 15, 2021, the second request was initially granted in part, but with caveats that prevented Capt Toor from engaging in his core religious practices. The partial approval provided that Capt Toor could wear a turban while in garrison, but he could not do so while forward deployed, subject to deployment on short notice, or when serving in a ceremonial unit. Ex. F.

110. It further provided that he could only wear a beard when neither deployed nor "subject to deployment on short notice." *Id.*

111. Capt Toor appealed this restrictive accommodation, because it did not permit him to wear his beard or religious articles when subject to deployment or while serving in ceremonial units. Ex. G.

112. The Marine Corps responded on August 25, 2021, giving him a slightly broader, but still limited, accommodation. Ex. H.

113.  The revised accommodation still prevented him from wearing a turban or *patka* when serving in ceremonial roles and from growing a beard in ceremonial roles or when deployed and receiving hostile-fire or imminent-danger pay.

114.  Capt Toor again appealed, asking for his accommodation to apply when (1) assigned to a ceremonial unit and (2) deployed and receiving hostile-fire or imminent-danger pay (absent threat of actual exposure to toxic CBRN agents). Ex. I.

115.  The Marine Corps responded to this second appeal on January 21, 2022, granting Capt Toor's request for accommodation when assigned to a ceremonial unit, but denying him any accommodation when deployed and receiving hostile-fire pay or imminent-danger pay. Ex. C.

116.  Notably, the Marine Corps abandoned its argument that uniformity was a compelling government interest, instead emphasizing its "commitment to an inclusive force" and quoting Defendant Gen. Berger's statement that "the strength of America is that we do not all look the same, we are not all from the same place, [and] we do not think the same." *Id.*

117.  Thus, Capt Toor's request to wear his beard and religious articles when serving in a ceremonial unit was granted. *Id.* at ¶ 3b.

118.   However, as to Capt Toor's second request, the Marine Corps took a novel approach, collapsing deployment when receiving hostile-fire or imminent-danger pay into a single category: being in a "combat zone." *Id.* at ¶ 3a.

119.  This move departs from the government's standard definition of "combat zone" which currently includes only four limited regions: the Sinai Peninsula, the Afghanistan area, the Kosovo area, and the Arabian Peninsula area.[16]

120.  The category of imminent-danger pay is significantly broader, including 39 countries such as Algeria, Israel, Turkey, Uganda, Burundi, and Guantanamo Bay.[17] Even though there is

---

[16]  IRS, *Combat Zones Approved for Tax Benefits*, https://perma.cc/7ZR7-XMUF.

[17]  *Imminent Danger Pay*, DoD FMR Vol. 7A, Ch. 10, https://perma.cc/G8VV-BH2K; *see also* DoD 7000.14-R, at 10-7, https://perma.cc/DE6S8K9G.

little to no risk of actual CBRN warfare in many of these areas, Capt Toor cannot be deployed to any of them without violating his religious beliefs.

121. Notably, on January 21, 2022, Capt Toor participated in and passed CBRN training, obtaining a satisfactory seal with his mask in the gas chamber. Ex. AA. His beard and turban did not inhibit his ability to properly wear a gas mask or to participate in rigorous training exercises in preparation for chemical warfare. *Id.*

122. Moreover, in the interest of preserving his life and the lives of others, Capt Toor's religion would allow him to shave and remove his religious articles if there is ever "threat of actual exposure to toxic CBRN agents" in a way that threatened his life or the lives of others. Ex. C at ¶ 3a(1).

Plaintiff Chahal's Commitment to the Sikh Religion

123. Plaintiff Milaap Singh Chahal has been a practicing Sikh from childhood. Since he was 11 years old, he has worn a turban continually, he has never shaved his beard, and he has attended Gurdwara weekly with his family. He also attended a Sikh school on weekends.

124. At age 15, he made the choice to be formally initiated (*amritdhari*) into the faith through a ceremony called *Amrit Sanskar*, where he was "reborn" and began a "new chapter" in his life.

125. He wears his beard and turban in a neat and conservative manner and wears a *kara* on his wrist as a visible religious article. His other religious articles, the *kanga, kacchera,* and *kirpan,* are worn underneath his clothing so that they are not generally visible.

126. He currently attends Gurdwara every day after work for multiple hours, where he participates in prayers, hymns, and religious discussion.

127. Every week, he volunteers his time teaching martial arts to Sikh children.

128. Because of his religious beliefs, he is a vegetarian, and he does not consume tobacco or alcohol.

129. His Sikh faith requires him to defend his community and to protect anyone subject to injustice.

Plaintiff Chahal's Desire to Join the Marine Corps

130.  As a first-generation Sikh American born in California, Chahal has wanted to serve his country in the Armed Forces ever since he was a child. His goal is to follow the rich tradition of courageous Sikhs in military service.

131.  Chahal's faith is at the core of his decision to become a Marine, and he believes every American should give back to their country through military or government service.

132.  In 2017, as a high school freshman, Chahal joined the Air Force Junior ROTC unit at Federal Way High School.

133.  Though he requested a religious accommodation, he was initially prohibited from wearing the uniform or participating in drills because of his turban, in addition to experiencing ridicule and backlash from adult leaders for not removing his articles of faith. Despite these challenges, Chahal continued showing up and was committed to participating to whatever extent possible. Eventually, he received a letter from the Pentagon ensuring that he could wear his turban, beard, and religious articles with his uniform and was able to fully participate in the program. Ex. GG.

134.  He received numerous ribbons throughout the program, including dress and appearance, academic, leadership school, and achievement ribbons.

135.  Chahal enjoyed his time in Air Force Junior ROTC, and the experience strengthened his fervent desire and career goal of serving his country in the military.

136.  Chahal has always been drawn to the Marine Corps because he views it as the most challenging branch when it comes to discipline and training, and because he strives to exemplify the Marine Corps' values of honor, courage, and commitment, consistent with the long tradition and values of Sikhs in military service.

Plaintiff Chahal's Efforts to Obtain an Accommodation

137.  Though a formal accommodation process for pre-accession recruits of the Marine Corps was not yet in place, in accordance with his beliefs, Chahal submitted a pre-accession request for

religious accommodation on March 1, 2021, via his recruiter, Major Cody L. Hardenburgh. Ex. BB.

138.  On June 30, 2021, Chahal went to a Military Entrance Processing Station (MEPS) under guidance from recruiters, where he passed the ASVAB test. He also passed all other physical and medical tests required for entrance into the Marine Corps.

139.  His recruiters told him he was fully qualified to join, but they sent him home early from MEPS because they told him he could not sign a contract or swear-in without either removing his turban or receiving a religious accommodation.

140.  On September 27, 2021, Chahal received a response from Defendant David A. Ottignon, the Deputy Commandant for Manpower and Reserve Affairs. Ex. J.

141.  The partial, temporary approval Chahal received does not protect his religious exercise because of the many limitations imposed.

142.  Under his current accommodation, during recruit training, Chahal is not authorized to wear any of his articles of faith, even the articles that are not visible or apparent when in uniform.

143.  Thus, in order to enter the Marines Corps at all, Chahal would have to violate his faith by shaving and cutting his hair for the first time ever.

144.  After recruit training, Chahal may not wear the turban or *kanga* whenever serving in ceremonial roles (an honor for any Marine to achieve during their career). He may only wear a beard when not in a ceremonial role and not receiving hostile-file or imminent-danger pay.

145.  His accommodation letter also suggests that, after accession, the accommodation could be subject to revocation by subsequent commanders and upon permanent changes of station or assignment. Ex. J.

146.  On October 21, 2021, Chahal appealed to the Commandant of the Marine Corps. Ex. K.

147.  Even though the Marine Corps was obligated by its own regulations to forward his request up the chain of command within 30 days and to issue a response within 60 days, Ex. L, a total of 172 days have passed with no response.

148.  Given the Marine Corps' extensive consideration of this issues, it is unlikely that its position will change in response to Chahal's appeal.

149.  While Chahal passed his ASVAB entrance exam in June 2021, the results will expire in June 2023, and he will be forced to start the process over absent relief from this Court.

Plaintiff Jaskirat Singh's Commitment to the Sikh Religion

150.  Plaintiff Jaskirat Singh grew up as a second-generation American in an observant Sikh household in Texas, regularly attending gurdwara with his family, a practice he continues as an adult. His father has been involved in leadership at their gurdwara, and his mother has taught Punjabi school.

151.  Jaskirat is trained in traditional Sikh martial arts and traditional Sikh instruments, having played at wedding ceremonies and other significant community events. As a matter of religious devotion, he abstains from alcohol and tobacco.

152.  In line with other observant Sikhs and his father's own practice, Jaskirat has maintained the practice of *kesh* (unshorn hair) from his childhood, which includes a beard in his adulthood. He also wears other articles of faith, including a *kara* on his wrist since he was two years old, and *kacchera* garb under his clothing, which he understands to symbolize both cleanliness and humility.

153.  Jaskirat sincerely believes that keeping his hair unshorn is an essential part of the Sikh religious practice. Similarly, he believes as a Sikh that he should always cover his head and unshorn hair with a turban or *patka*. At 16, Jaskirat participated in the *Dastar Bandi* turban-tying ceremony, a religious ceremony in which he committed to wear his turban as part of his religious identity as a Sikh man.

154. Because his uncut hair, beard, and turban are central features of Jaskirat's religious exercise by which he honors God, to deny him these aspects of his identity is to deny him the right to belong to the Sikh faith. He believes that according to the *Rehat Maryada*, the removal of hair from the body is an act considered as reprehensible as adultery.

23

Plaintiff Jaskirat Singh's Desire to Join the Marine Corps

155.  Jaskirat has had a longstanding desire to serve his country in the Armed Forces. This desire derives from his patriotism and his family's military history dating back to his great-grandfather. His passion for protecting the vulnerable, including his own community and those of different faiths, is rooted in his religious faith.

156.  In high school, Jaskirat participated in the Air Force Junior ROTC, which accommodated his articles of faith.

157.  Jaskirat then signed a contract with the Marine Corps. His recruiter encouraged him to join despite his need for religious accommodation, with the understanding that there would be time enough to resolve the accommodation request with the Marine Corps later.

158.  Jaskirat subsequently passed all relevant physical and medical examinations, and is eligible for accession at any time, pending the accommodation process discussed further below.

159.  Jaskirat understands the core values of the Marine Corps, and its approach to service and placing team before self, to go hand-in-hand with the values of the Sikh faith, which teaches that you raise your hand for someone else before you raise it for yourself.

160.  Because Jaskirat wants to follow in the legacy of military service, as many observant Sikhs have before him, he is committed to giving his all to the Marine Corps. That is why he made his accommodation request and submitted his appeal before accession.

Plaintiff Jaskirat Singh's Efforts to Obtain an Accommodation

161.  On November 24, 2021, Jaskirat sought a religious accommodation allowing him to wear his hair uncut, including a neatly groomed beard, and to wear the turban with his Marine uniform, to fully reconcile his religious identity with his service as a Marine. Ex. M.

162.  On February 7, 2022, Jaskirat received a response from Defendant Ottignon, the Deputy Commandant for Manpower and Reserve Affairs. Ex. A.

163.  The partial, temporary approval Jaskirat received does not protect his religious exercise because of the many limitations imposed.

164.  Under his current accommodation, during recruit training, Jaskirat is not authorized to wear any of his articles of faith. Thus, in order to enter the Marines Corps at all, Jaskirat would have to violate his faith by shaving and cutting his hair for the first time ever. He could not wear his *kara* either.

165.  After recruit training, Jaskirat may only wear a beard when not receiving hostile-file or imminent-danger pay. If deployed to one of the dozens of locations covered by these categories, he would immediately have to shave his beard.

166.  His accommodation letter also suggests that, after accession, the accommodation could be subject to revocation by subsequent commanders and upon permanent changes of station or assignment. Ex. A.

167.  In explaining its denial of Jaskirat's request for accommodation during recruit training, the Marine Corps emphasized the importance of uniformity in "breaking down individuality and training recruits to think of their team first." Ex. A at ¶ 2d.

168.  Given the Marine Corps' extensive consideration of these issues, it is unlikely that its position will change in response to Jaskirat's internal appeal, which he filed on February 21, 2022. Ex. N.

169.  The Delayed Entry Program, which Jaskirat entered when he signed his contract, allows a recruit to wait only one year to begin recruit training. Thus, his contract will expire on April 30, 2022. Jaskirat requests relief from this Court before that date, so that his contract does not expire while his case is pending.

Plaintiff Aekash Singh's Commitment to the Sikh Religion

170.  Plaintiff Aekash Singh has been an observant Sikh since childhood. Growing up in an Indian American family who adopted him at a young age, he began attending Punjabi folk dance and classical instrument lessons around age 8. He has worn a turban since eighth grade, even when he was the only student wearing a turban at his school.

171.  He faithfully maintains *kesh* or unshorn hair, which means he has never cut his hair or shaved his beard, and wears both in a neat and conservative manner. These articles of faith are an integral part of his identity.

172.  Aekash attended Gurdwara every week throughout his childhood, and has continued faithfully attending, weekly except when religious services were disrupted by the COVID-19 pandemic and related government restrictions in California.

173.  To celebrate his ability to speak Punjabi and read from the holy scripture, Aekash participated in the ceremony of *Charni Lagna* as a child.

174.  Aekash wears the turban as a spiritual discipline signifying sovereignty, dedication, self-respect, morality, courage, and piety. He wears it out of love and as a mark of commitment to the faith.

175.  In eighth grade, Aekash participated in the *Dastar Bandi* turban-tying ceremony, where he publicly committed to wear his turban as part of his religious identity while coming of age a Sikh man. The turban has immense spiritual and temporal significance to him. To this day, Aekash has never gone out in public without a turban unless he is swimming or playing competitive sports, and even in those instances he wears a *patka* (a smaller head covering worn in the place of a turban for intense physical activity).

176.  Since he was a young child, Aekash has continually worn the *kara* on his wrist as a reminder that he is a servant of God and should not take any action that may bring shame or disgrace. He has never removed the *kara* because it reminds him to do what is right, and it carries as much religious significance as his beard, unshorn hair, and turban.

177.  As part of his religious practice, Aekash does not drink alcohol. He also seeks to learn more about the history of his faith by reading scriptures and other sacred texts.

178.  His Sikh faith requires him to defend his community and to protect anyone subject to injustice.

Plaintiff Aekash Singh's Desire to Join the Marine Corps

179.   Aekash was adopted and immigrated to the U.S. in 2007, at the age of five, and he became a citizen that same year. He has lived in San Carlos, CA ever since, and speaks English, Hindi, and Punjabi. He believes in giving back to his country and committing to a cause much greater than himself.

180.   Aekash's family has a rich history of military service. His great-great-grandfather served in World War II, and his uncle currently serves as an officer in the U.S. Army. He desires to follow in this legacy of service and leadership, just like the courageous Sikhs before him.

181.   Aekash's interest in joining the military was sparked at a young age, when his mother told him of her dream to be a pilot in the Air Force.

182.   When his parents got married, they both wanted to join the Army, but were unable to because his father would have had to cut his hair and violate his religious beliefs.

183.   In high school, after speaking with a retired Marine who is the father of his best friend, he was inspired to become a Marine himself.

184.   Aekash is drawn to the Marine Corps because he believes it is the most challenging branch when it comes to discipline and training, and because he strives to exemplify the Marine Corps values of honor, courage, and commitment. He also views the Marines as the "warrior" branch of the military, which he sees as consistent with the rich tradition of Sikhs serving as courageous warriors against injustice.

Plaintiff Aekash Singh's Efforts to Obtain an Accommodation

185.   When Aekash first began meeting with recruiters, he expressed a desire for a religious accommodation so he could become a Marine without compromising his core religious beliefs and practices.

186.   After working with a recruiter, Aekash went to a Military Entrance Processing Station (MEPS) on September 30, 2020. He passed the ASVAB test and physical tests there but was told by Sergeant Major Caceres that he could not sign a contract unless he would cut his hair. When

Aekash refused because of his religious beliefs, Sergeant Major Caceres told him he was not authorized to join the Marine Corps.

187.  A formal accommodation process for pre-accession recruits was not yet in place, but his recruiter, Staff Sergeant Geddylee Lawas, encouraged Aekash to submit one and promised to help get it processed.

188.  On October 9, 2020, under guidance from recruiters who told him he could enter the Delayed Entry Program, Aekash returned to MEPS to swear in. But again he was asked to sign a document promising to cut his hair. When he declined because of his religious beliefs, he was told to leave the swear-in room and that he would have to remove his turban in order to be sworn in.

189.  In accordance with his beliefs, Aekash submitted a pre-accession request for religious accommodation on March 1, 2021, via Staff Sergeant Lawas. Ex. O.

190.  On March 2, 2021, upon request, counsel for Aekash shared a copy of this request with then-Acting Navy General Counsel Gary Ressing, with whom they extensively discussed what process to use for pre-accession religious accommodation requests. In the following weeks, counsel continued corresponding with Mr. Ressing to confirm the status of Aekash's request.

191.  On April 30, counsel spoke with Major General Daniel Lecce about the potential "catch 22" that Aekash faced given that he had not yet signed a contract with the Marine Corps, and the disconnect in protocol given that he was allowed to go to the Military Entrance Processing Station but not permitted to sign his contract, which would allow him to request a religious accommodation.

192.  Major General Lecce agreed that this was problematic and followed up on May 19, 2021, asking counsel to resend Aekash's request because it had not yet moved up the chain.

193.  On June 3, Major General Lecce stated, "We are tracking your client[']s pending accommodation requests."

194.  When Aekash followed up after additional months of delay, counsel for the Commandant of the Marine Corps, Lieutenant Colonel Dawn Steinberg, responded on October 8, 2021 that Aekash "has not officially begun the religious accommodation process" and "would need to re-

initiate communication with Marine Corps recruiters to confirm that he is still interested in enlisting." Ex. P.

195.  LtCol Steinberg's response is inconsistent with Aekash's repeated efforts to request a pre-accession accommodation and his follow-up on its pending status.

196.  Nevertheless, in the interest of moving his accommodation forward and given his fervent desire to serve our country as a Marine, Aekash hand-delivered his original religious accommodation package to Marine Corps Recruiting Command on October 13, 2021.

197.  In December 2021, Aekash received a text from his recruiter, SSgt Lawas, asking him to write a statement confirming that he was a "conscientious objector" "due to [his] religion," because "the command is asking for it." Ex. CC. Aekash explained that he is not a conscientious objector but in fact wants "to obtain a religious accommodation to enlist into the United States Marine Corps." *Id.*

198.  The Marine Corps delayed nearly a year in processing Aekash's request, despite numerous communications regarding the status of the request and even though its own regulations require forwarding his request up the chain of command within 30 days and issue a response within 60 days. Ex. L.

199.  On February 22, 2022, Aekash finally received a response from Defendant Ottignon, the Deputy Commandant for Manpower and Reserve Affairs. Ex. Q.

200.  The partial, temporary approval Aekash received does not protect his religious exercise because of the many limitations imposed.

201.  Under his current accommodation, during recruit training, Aekash is not authorized to wear any of his articles of faith. Thus, in order to enter the Marines Corps at all, Aekash would have to violate his faith by shaving and cutting his hair for the first time ever. He could not wear his *kara* either.

202.  After recruit training, Aekash may only wear a beard when not receiving hostile-file or imminent-danger pay. If deployed to one of the dozens of locations covered by these categories, he would immediately have to shave his beard.

203.  His accommodation letter also suggests that, after accession, the accommodation could be subject to revocation by subsequent commanders and upon permanent changes of station or assignment. Ex. Q.

204.  Given the Marine Corps' extensive consideration of this issues, it is unlikely that its position will change in response to Aekash's appeal, which he filed on March 8, 2022. Ex. R.

205. While Aekash passed his ASVAB entrance exam in September 2020, the results will expire in September 2022 and he will be forced to start the process over absent relief from this Court.

<u>Prior Engagement with Defendants Regarding Sikh Religious Accommodations</u>

206.  Beginning in September 2019, counsel for Plaintiffs began outreach to then Chief of Naval Personnel, John B. Nowell, Jr., to express concerns regarding Navy policies surrounding religious accommodations. Counsel sent Mr. Nowell's office a letter outlining these concerns and engaging in significant discussion regarding the discriminatory nature of the policies in effect at that time. Ex. DD.

207.  Counsel had a meeting scheduled with then Navy General Counsel Robert Sander on March 16, 2020, to discuss both the Navy and Marine Corps' religious accommodation processes. That meeting was canceled due to the COVID-19 pandemic, so counsel shifted to teleconference meetings to express ongoing concerns with the policies in terms of their applicability to Sikh recruits and servicemembers.

208.  Over the course of 2020 and early 2021, counsel continually engaged with the Navy General Counsel's office, including with Acting General Counsel Gary Ressing and others. *See, e.g.*, Ex. EE (Feb. 2020 Letter to General Berger); Ex. FF (Aug. 2020 Letter to William McWaters). At all times, counsel made it clear that any attempts at proactive discussions beginning in 2019 were an effort to clear a path of equal access to employment for observant Sikhs to join the U.S. Marine Corps, and that the Navy General Counsel's office should be prepared to receive Sikh religious accommodation requests in the near future.

The Marine Corps' Obligation to Provide Religious Accommodations

209.  Congress has long demanded that "[u]nless it could have an adverse impact on military readiness, unit cohesion, and good order and discipline, the Armed Forces shall accommodate the individual expression of belief of a member of the armed forces reflecting the sincerely held conscience, moral principles or belief of the member and, in so far as practicable, may not use such expression of belief as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training or assignment." National Defense Authorization Act 2013, H.R. 4310, 112th Cong. 2 Sess. (2013) (as amended by National Defense Authorization Act 2014, H.R. 3304, 113th Cong. 1 Sess. (2014)).

210.  In response to this directive, in 2014, the Department of Defense amended its Instruction 1300.17 regarding religious accommodations to be more accommodating toward religious minorities.

211. That Instruction was again updated in 2020 and affirmatively provides that the Department of Defense "will accommodate individual expression[] of sincerely held beliefs . . . which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety." Ex. Y at ¶ 1.2(b)).

212.  It further provides that a religious accommodation against a "military policy, practice, or duty [that] substantially burdens a Service Member's exercise of religion can only be denied if: (1) [t]he military policy, practice, or duty is in furtherance of a compelling governmental interest" and "(2) [i]t is the least restrictive means of furthering that compelling governmental interest." Ex. Y at ¶ 1.2(e).

213.  Marine Corps Regulations incorporate these instructions by reference, providing that "Marines may wear . . . [a]rticles of religious apparel which are not visible or apparent when worn with the uniform" and "[v]isible articles of religious apparel with the uniform as permitted by 10 U.S.C. § 774, 42 U.S.C. § 2000bb-1, DoDI 1300.17, and SECNAVINST 1730.8, with approval of CMC or designee." Ex. V, MCO 1020.34H (May 1, 2018), at ¶ 6(a)-(c).

214. MCO 1730.9 also guarantees that "the Marine Corps *will accommodate* individual expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs) which do not have an adverse impact on a compelling government interest." Ex. L at ¶ 2 (emphasis added). It further provides that "[n]o Marine will be asked to change their personal beliefs, including religious beliefs, which are protected by the United States Constitution. The Corps has an obligation to try to find ways to facilitate each Marine's commitment to their faith as well as to each other." *Id.* at ¶ 3(b)(3).

The Marine Corps' Alleged Compelling Interest

215. Defendants have repeatedly stated a concern that granting an accommodation to a Sikh Marine to wear his beard and turban would interfere with the Marine Corps' interest in uniformity.

216. The Marine Corps claims a "compelling interest in instilling in each Marine an identity as part of a team," and that the uniform is a tool to achieve that interest. *Id.* at ¶ 3(b)(1).

217. In the original responses to Plaintiff Toor's and Plaintiff Chahal's accommodation requests, the Marine Corps explained that its interest in uniformity becomes "significantly more important in a combat zone;" that there is a "heightened need for uniformity when performing ceremonial duties;" and that the Marine Corps' "compelling interest [in uniformity] is at its highest" during recruit training.

218. For Plaintiffs Milaap Singh Chahal, Aekash Singh, and Jaskirat Singh, the Marine Corps' conduct fails to demonstrate that its uniformity requirement for recruit training meets any compelling interest. Midshipmen at the U.S. Naval Academy, who are trained over a four-year period to become either Navy sailors or Marines, are permitted to maintain beards and religious head coverings pursuant to approved religious accommodations. Ex. D. USNA midshipmen graduate as commissioned officers and do not have to declare which branch they will ultimately join until their third or fourth year.[18] The fact that midshipmen may attend USNA and become Marines while wearing religious head coverings and beards without impacting their uniformity or

---

[18] USNA, *Marine Selection* (Dec. 13, 2021), https://perma.cc/WL9R-96EN.

cohesion with their fellow graduates while Plaintiffs are told they cannot attend recruit training for those very reasons undermines Defendants' compelling interest claim.

219.  Capt Toor's most recent accommodation letter, however, abandons the allegedly compelling interest of "uniformity"—emphasizing instead the Marine Corps' commitment to diversity and inclusion. The Marine Corps focuses instead on alleged CBRN risks when deployed in "combat zones." Ex. C.

220.  But the Marine Corps has not shown that there is an actual risk of CBRN warfare in every location categorized as a "combat zone." Its stated interest is too generalized to be compelling.

221.  Indeed, upon information and belief, Marines stationed in so-called "combat zones," or areas where they are entitled to hostile-fire or imminent-danger pay, are not required to keep their gas masks on or near them at all times, confirming that Defendants do not believe there is a threat of actual CBRN risk in those locations imminent enough to require all Marines to be clean-shaven.

222.  Capt Toor has passed his gas mask fit testing with a full, neatly groomed beard. Ex. AA. Navy officers growing beards for medical reasons have also confirmed that their seals were effective even "through the confidence chamber containing tear gas."[19]

223.  And at the same time the Marine Corps is denying religious accommodations for beards, it has *expanded* its medical accommodations, granting indefinite waivers to Marines with *pseudofolliculitis barbae*, for example, and allowing them to serve without limitation in "combat zones." The same has often been true for Marines participating in special operations.

224.  Other branches of the U.S. military and militaries around the world have been able to accomplish their mission while accommodating Sikh servicemembers, who have directly contributed to that mission through their courage and sacrifices.

225.  Further, as the Marine Corps has recognized, Ex. L at ¶ 3(a)(4), the relevant question is not whether Defendants have a compelling interest in general, but rather whether they have a

---

[19]   Geoff Ziezulewicz, *How the Navy's Beard Policy Discriminates Against Black Sailors*, Navy Times (Apr. 5, 2022), https://perma.cc/2MJK-4FRX/.

compelling interest in denying accommodations to these three Plaintiffs in their particular circumstances.

226.  Defendants do not have such a compelling interest, because these accommodations, if granted, do not in and of themselves detract from the Marine Corps' unity or safety, as is evident from other exceptions granted within the Marine Corps, and from observant Sikhs serving faithfully in other branches of the United States Armed Forces as well as in militaries around the world.

<u>Least Restrictive Means</u>

227.  Defendants cannot show that forcing Plaintiffs Milaap Singh Chahal, Jaskirat Singh, and Aekash Singh to shave before they even begin recruit training is the least restrictive means of resolving their alleged concerns.

228.  The fact that the USNA, the U.S. Military Academy at West Point, the Army and Air Force (including at recruit training) all allow religious beards and have accommodated Sikhs' other religious articles belies any supposedly compelling reason Defendants may assert for suppressing Plaintiffs' religious exercise.

229.  And the allowance for religious beards and articles of faith by militaries around the world, including in the United Kingdom, Canada, Israel, Australia, New Zealand, and India, as well as by police and fire departments throughout the U.S., further undermines Defendants' claims.

230.  So do accommodations made for medical reasons or for special operations. All these accommodations suggest that one less restrictive means would be to grant religious accommodations to the same extent.

231. A range of alternative technologies can help accommodate religious beards, including under-mask beard bands, tied using the *Singh Tattha* method. Ex. Z. Other alternatives include synthetic skin hoods, as patented by former Canadian Defense Minister Harjit Sajjan, and non-flammable beard gels used to create airtight seals. Defendants have not shown that any of these alternative technologies would be impracticable ways of accommodating Plaintiffs' religious practice.

232.  Defendants bear the burden to show that the approach taken in these other circumstances, as well as by other branches of the military, by militaries worldwide, and by police and fire departments across the nation is not viable. Defendants have failed to meet this burden.

## CLAIMS

## COUNT I

### Violation of the Religious Freedom Restoration Act (RFRA)

### Substantial Burden

233.  Plaintiffs incorporate by reference all preceding paragraphs.

234.  Plaintiffs' sincerely held religious beliefs require them to wear neatly maintained unshorn beards, turbans, and other religious articles. Their compliance with these beliefs is a religious exercise.

235.  The Marine Corps' discriminatory regulations and treatment expose Capt Toor in particular to serious consequences of military discipline and the loss of his career for his religious exercise—as he currently serves as a Marine.

236.  The only reason the other Plaintiffs do not immediately face these consequences is that they are pre-accession applicants. Yet the consequences for them are in many ways worse; they are put to the choice of abandoning their courageous, religiously motivated goals of serving their country in the Marine Corps, or abandoning their deeply held religious beliefs by cutting their hair, shaving for the first time, and removing their religious articles before even becoming Marines.

237.  The Marine Corps' discriminatory regulations and treatment create government-imposed coercive pressure on all Plaintiffs to change or violate their religious beliefs.

238.  The Marine Corps' discriminatory regulations and treatment chill Plaintiffs' religious exercise.

239.  The Marine Corps' discriminatory regulations and treatment impose a substantial burden on Plaintiffs' religious exercise.

240.  The Marine Corps' discriminatory regulations and treatment do not further a compelling governmental interest as applied to Plaintiffs.

241.   Applying the Marine Corps' discriminatory regulations and treatment to Plaintiffs is not the least restrictive means of furthering any compelling governmental interest.

242.   The Marine Corps' discriminatory regulations and treatment of its grooming and personal appearance regulations thus violate rights secured to Plaintiffs by RFRA, 42 U.S.C. § 2000bb, et seq.

243.   Plaintiffs have already suffered harm—being coerced and compelled to choose between serving in the U.S. military and following the dictates of their own religious consciences. Absent injunctive and declaratory relief, Plaintiffs will continue to be harmed.

<u>**COUNT II**</u>

**42 U.S.C. § 1983**

**Violation of the First Amendment to the United States Constitution**

**Free Exercise Clause**

**Burden on Religious Exercise**

244.   Plaintiffs incorporate by reference all preceding paragraphs.

245.   Plaintiffs' sincerely held religious beliefs require them to wear neatly maintained beards. Their compliance with these beliefs is a religious exercise.

246.   The Marine Corps' grooming and personal appearance regulations are not neutral.

247.   The Marine Corps' treatment of Plaintiffs is not neutral.

248.   The Marine Corps' grooming and personal appearance regulations are not generally applicable.

249.   The Marine Corps' treatment of Plaintiffs is not generally applicable.

250.   Defendants have created categorical exemptions and individualized exemptions from their grooming and personal appearance regulations.

251.   The Marine Corps' discriminatory treatment and grooming and personal appearance regulations create government-imposed coercive pressure on Plaintiffs to change or violate their religious beliefs.

252.  The Marine Corps' discriminatory treatment and regulations chill Plaintiffs' religious exercise.

253.  The Marine Corps' discriminatory treatment and regulations expose Plaintiffs to substantial consequences for their religious exercise of wearing a beard, turban, and other religious articles, including military discipline and the loss of their careers.

254.  The Marine Corps' discriminatory treatment and regulations burden Plaintiffs' religious exercise.

255.  The Marine Corps' discriminatory treatment and regulations further no compelling governmental interest.

256.  The Marine Corps' discriminatory treatment and regulations are not the least restrictive means of furthering Defendants' stated interests.

257.  The Marine Corps' discriminatory treatment and its enforcement of its grooming and personal appearance regulations thus violate Plaintiffs' rights as secured by the Free Exercise Clause of the First Amendment to the United States Constitution.

258.  Plaintiffs have already suffered harm—prevented from living out their sincerely held beliefs, and forced to choose between serving in the U.S. military and following the dictates of their own consciences. Absent injunctive and declaratory relief against the Marine Corps' regulations, Plaintiffs will continue to be harmed.

## **COUNT III**

### **42 U.S.C. § 1983**

### **Violation of the First Amendment to the United States Constitution**

### **Free Exercise Clause**

### **Intentional Discrimination**

259.  Plaintiffs incorporate by reference all preceding paragraphs.

260.  Plaintiffs' sincerely held religious beliefs require them to wear neatly maintained beards. Their compliance with these beliefs is a religious exercise.

261.  Despite being informed in detail of Plaintiffs' beliefs, Defendants declined to give them accommodations that would allow them to comply both with their beliefs and the Marine Corps' regulations.

262.  Defendants have no legitimate basis for denying Plaintiffs a religious accommodation.

263.  Defendants denied Plaintiffs an accommodation because of their religion that they would have afforded for comparable nonreligious expression.

264.  Defendants targeted Plaintiffs for heightened scrutiny because they requested an accommodation for their religious beliefs.

265.  The Marine Corps' threatening to enforce its regulations against Plaintiffs thus violates their rights under the Free Exercise Clause of the First Amendment to the United States Constitution.

266.  The Marine Corps' refusal to grant Plaintiffs accommodations to allow them to practice their religion despite accommodations being granted to other servicemembers exhibits hostility toward Plaintiffs' religion, thus violating their rights under the Free Exercise Clause of the First Amendment to the United States Constitution.

267.  Plaintiffs have already suffered harm—prevented from living out their sincerely held beliefs, and forced to choose between serving in the U.S. military and following the dictates of their own consciences. Absent injunctive and declaratory relief, Plaintiffs will continue to be harmed.

<u>**COUNT IV**</u>

**42 U.S.C. § 1983**

**Violation of the First Amendment to the United States Constitution**

**Freedom of Speech**

268.  Plaintiffs incorporate by reference all preceding paragraphs.

269.  The Marine Corps' regulations prohibit Plaintiffs from expressing their faith through wearing neatly maintained beards and religious articles.

270.  The Marine Corps continues to permit other forms of personal individualized expression, such as tattoos and alternative hairstyles.

271.  The Marine Corps' discriminatory treatment and regulations place a chilling effect on Plaintiffs' expression of their faith through obedience to their sincerely held beliefs via outward, physical articles of faith.

272.  The Marine Corps' discriminatory treatment and regulations constitute content discrimination.

273.  The Marine Corps' discriminatory treatment and regulations constitute viewpoint discrimination.

274.  As applied to Plaintiffs, the Marine Corps' discriminatory treatment and grooming and personal appearance regulations are not necessary for good order, discipline or national security and do not satisfy strict scrutiny.

275.  The Marine Corps' discriminatory treatment and its enforcement of its grooming and personal appearance regulations against Plaintiffs thus violate their rights under the Free Speech Clause of the First Amendment to the United States Constitution.

276.  Plaintiffs have already suffered harm. Absent injunctive and declaratory relief, Plaintiffs will continue to be harmed.

## COUNT V

### 42 U.S.C. § 1983

### Violation of the Fifth Amendment to the United States Constitution

### Substantive Due Process

277.  Plaintiffs incorporate by reference all preceding paragraphs.

278.  Free exercise of religion is a fundamental right.

279.  Plaintiffs' sincerely held religious beliefs require them to wear neatly maintained beards and religious articles. Their compliance with these beliefs is a religious exercise.

280.  Plaintiffs' fundamental right to engage in religious exercise has been burdened by the Marine Corps' regulations and its limited approach to religious accommodations.

281.  The Marine Corps' discriminatory treatment and enforcement of its grooming and personal appearance regulations against Plaintiffs thus violate their rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

282.  Plaintiffs have already suffered harm. Absent injunctive and declaratory relief, Plaintiffs will continue to be harmed.

## COUNT VI

### 42 U.S.C. § 1983

### Violation of the Fifth Amendment to the United States Constitution

### Equal Protection

283.  Plaintiffs incorporate by reference all preceding paragraphs.

284.  The Marine Corps accommodates other types of personal expression of other servicemembers, such as tattoos and diverse hairstyles, which likewise implicate the Corps' purported interests in denying Plaintiffs a religious accommodation.

285.  The Marine Corps increasingly accommodates beards for medical reasons, which pose the same alleged risk during deployment that Plaintiffs' religious beards would pose.

286.  The Marine Corps' discriminatory treatment and its enforcement of its grooming and personal appearance regulations against Plaintiffs thus violate their rights under the Fifth Amendment to the United States Constitution's guarantee of equal protection.

287.  Plaintiffs have already suffered harm. Absent injunctive and declaratory relief, Plaintiffs will continue to be harmed.

## COUNT VII

### 42 U.S.C. § 1983

### Violation of the Fifth Amendment to the United States Constitution

### Procedural Due Process

288.  Plaintiffs incorporate by reference all preceding paragraphs.

289.  Plaintiffs' sincerely held religious beliefs require them to wear neatly maintained beards. Their compliance with these beliefs is a religious exercise.

290. Enforcement of the Marine Corps' regulations against Capt Toor—disciplining him for wearing a beard and religious articles—would result in the loss of his livelihood as a Marine and violate his procedural due process rights by wrongfully impairing his property and liberty interests.

291. Enforcement of the Marine Corps' regulations against Plaintiffs Milaap Singh Chahal, Jaskirat Singh, and Aekash Singh would force them to choose between exercising their faith and exercising their religious-motivated duty to serve their country as Marines, with the latter being permitted only under terms that wrongfully impair their property and liberty interests.

292. Plaintiffs have already suffered harm. Absent injunctive and declaratory relief, Plaintiffs will continue to be harmed.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that the Court:

a. Declare that the Religious Freedom Restoration Act requires the Marine Corps to cease discriminating against Plaintiffs and accommodate their religious exercise in maintaining beards and religious articles as set forth above;

b. Declare that the First Amendment of the United States Constitution requires the Marine Corps to cease discriminating against Plaintiffs and accommodate their religious exercise in maintaining beards and religious articles as set forth above;

c. Declare that the Fifth Amendment of the United States Constitution requires Defendants to cease discriminating against Plaintiffs and accommodate their religious exercise in maintaining beards and religious articles as set forth above;

d. Issue a temporary restraining order and a preliminary injunction enjoining Defendants from requiring Capt Toor, Milaap Singh Chahal, Jaskirat Singh, and Aekash Singh to shave their existing beards, cut their hair, or remove their religious articles as a condition of service in the Marine Corps;

e. Issue an injunction extending the term of Jaskirat Singh's Delayed Entry Program contract for the duration of this lawsuit and ensuring that the ASVAB results of Plaintiffs Milaap Chahal Singh and Aekash Singh will not expire for the duration of this lawsuit;

f.  Issue a permanent injunction (1) enjoining Defendants from enforcing the Marine Corps' grooming and personal appearance regulations against Plaintiffs, insofar as the regulations prohibit them from keeping neatly maintained beards; (2) ordering Defendants to permit these Plaintiffs to serve in the Marine Corps regardless of whether they wear beards and religious articles; and (3) ordering that the injunction will apply to all Marine Corps posts that these Plaintiffs will hold in the future, unless the Marine Corps at that time makes an individualized showing of a compelling governmental interest that cannot be satisfied by less restrictive means;

g.  Award nominal damages and compensatory damages;

h.  Award Plaintiffs the costs of this action and reasonable attorney fees; and,

i.  Award such other and further relief as it deems equitable and just.

## JURY DEMAND

Plaintiffs request a trial by jury on all issues so triable.

Respectfully submitted this 11th day of April, 2022.

/s/ Eric S. Baxter
Eric S. Baxter (D.C. Bar No. 479221)
Daniel Blomberg (D.C. Bar No. 1032624)
Diana Verm Thomson (D.C. Bar No. 1811222)
Chris Pagliarella (D.C. Bar No. 273493)
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC, 20006
(202) 955-0095 PHONE
(202) 955-0090 FAX
*ebaxter@becketlaw.org*

Amandeep S. Sidhu (D.C. Bar No. 978142)
Winston & Strawn LLP
1901 L St., NW
Washington, DC, 20036-3506
(202) 282-5828 PHONE
(202) 282-5100 FAX
*asidhu@winston.com*

Amrith Kaur Aakre (Admission *pro hac vice* pending)
Giselle Klapper (Admission *pro hac vice* pending)
The Sikh Coalition
50 Broad St., Suite 504
New York City, New York 10004
(847) 786-5839 PHONE
amrith@sikhcoalition.org
giselle@sikhcoalition.org

**Counsel for All Plaintiffs**

Brian W. Song (Admission *pro hac vice* pending)
Matthew K. Cowherd (D.C. Bar 229924)
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201
*bsong@bakerlaw.com*
*mcowherd@bakerlaw.com*

**Counsel for Plaintiff Jaskirat Singh**