UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUKHBIR SINGH TOOR, et al., )
)
      Plaintiffs, )
)
v. ) Civil Case No. 22-1004 (RJL)
)
DAVID H. BERGER, et al., )
)
      Defendants. )

MEMORAND~~UM~~ **th** OPINION
(August 2̶4̶ 24, 2022) [Dkt. #16]

Plaintiffs, one United States Marine Corps ("Marines" or "Marine Corps") Captain and three qualified Marines recruits, seek religious accommodations from the Marine Corps. Devout Sikhs, plaintiffs claim that they are obligated by their faith to maintain an unshorn beard and hair, to wear a turban, and to wear other religious articles—practices that conflict with the Marine Corps' uniform and grooming policies, in particular for those recruits undergoing basic training (i.e., boot camp). After the Marine Corps granted in part and denied in part plaintiffs' individual requests for religious accommodations, plaintiffs filed this action alleging that the failure to accommodate their religious beliefs and exercise violates the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq., and the First and Fifth Amendments to the U.S. Constitution. The three recruits now move for preliminary relief to "prevent[] the Marine Corps from enforcing its uniform and grooming policy as to their religious articles of faith" so that they may enter basic training

1

while maintaining their religious practice. Pls.' Memo. in Support of Application for Prelim. Inj. ("P.I. Memo.") [Dkt. #16-1] at 2.

Because plaintiffs have failed to show that the balance of the equities and the public interest support the extraordinary remedy of a preliminary injunction, plaintiffs' Motion for a Preliminary Injunction is hereby DENIED.

## BACKGROUND

### A. Factual Background

Plaintiffs Sukhbir Singh Toor, Milaap Singh Chahal, Jaskirat Singh, and Aekash Singh wish to serve as Marines "without having to abandon their faith as devout Sikh Americans." Complaint ("Compl.") [Dkt. #1] at ¶ 1. According to plaintiffs, Sikhism is a monotheistic religion that originated in the Punjab region of South Asia and believes in "one God that is all loving, all pervading, and eternal" and whose "love is obtained through grace and sought by service to mankind." Compl. ¶¶ 73, 76. "Sikhs wear external articles of faith to bind them to the beliefs of the religion," including unshorn hair (*kesh*), "a small wooden comb" (*kanga*), "an iron or steel bracelet" (*kara*), "a special, boxer-style undershort" (*kacchera*), and "a small knife" (*kirpan*). Compl. ¶¶ 78–79. "[R]emoval of hair from the body" is "one of four major taboos"—a list which also includes adultery. Compl. ¶ 82. Each of the four plaintiffs claims that he is obligated by his faith to maintain an unshorn beard and hair, to wear a turban, and to wear other religious articles. *See generally* Compl. ¶ 234; *see also* Compl. ¶¶ 94, 96 (Captain Toor); ¶ 125 (Chahal); ¶¶ 152–53 (Jaskirat Singh); ¶¶ 171, 174, 176 (Aekash Singh).

Plaintiff Toor has served in the Marine Corps since 2017 and is currently a Captain. Compl. ¶¶ 18–19. After seeking and receiving, in part, a religious accommodation allowing him to wear a beard and turban, Captain Toor has twice appealed the Marines' decision, which currently prevents him from maintaining his beard "when deployed and receiving hostile-fire or imminent-danger pay." Compl. ¶¶ 18, 23–25.

The remaining three plaintiffs are prospective Marines who are "qualified applicants for accession into the Marine Corps through the Delayed Entry Program," which allows recruits to postpone training for a specified period. Compl. ¶¶ 27, 29. "They are fully qualified to begin recruit training, having passed the Initial Strength Test and the Armed Service Vocational Aptitude Battery (ASVAB) test and having been accepted into the Marine Corps pending resolution of their request for a religious accommodation." Compl. ¶ 28. Each recruit has sought a similar religious accommodation to maintain his unshorn hair and beard, to wear a turban, and to carry other religious articles. *See* Compl. ¶¶ 31–37. After the Marine Corps denied the three recruits any accommodation during recruit or basic training, they appealed the decisions. *See id.* Although each of the three recruits is qualified to begin recruit training, plaintiff Aekash Singh's passage of the entrance exam will expire in September 2022 (Compl. ¶ 205); plaintiff Jaskirat Singh's passage will expire in October 2022 (Joint Status Report [Dkt. #19]); and plaintiff Milaap Singh Chahal's passage will expire in June 2023 (Compl. ¶ 149).

**B. Procedural Background**

Seeking declaratory and injunctive relief and nominal and compensatory damages, Captain Toor and the three recruits sued the U.S. Department of Defense and its Secretary,

3

the U.S. Department of the Navy and its Secretary, the Commandant and Assistant Commandant of the Marine Corps, and the Deputy Commandant of Manpower and Reserve Affairs (collectively, "defendants" or "Marines" or "Marine Corps"). *See generally* Compl. They allege that the Marine Corps' failure to accommodate their religious beliefs and exercise (1) violates RFRA; (2) burdens plaintiffs' religious exercise in violation of the First Amendment to the U.S. Constitution; (3) intentionally discriminates against plaintiffs because of their religious exercise in violation of the First Amendment; (4) violates the Free Speech Clause of the First Amendment by prohibiting plaintiffs from expressing their faith; (5) violates plaintiffs' fundamental right to free exercise of religion in violation of the Fifth Amendment to the U.S. Constitution; (6) discriminates against plaintiffs in violation of the Equal Protection Clause of the Fifth Amendment; and (7) impairs plaintiffs' property and liberty interests in violation of the Fifth Amendment. *See* Compl. ¶¶ 233–92.

The three recruits, Milaap Singh Chahal, Jaskirat Singh, and Aekash Singh, now "move for a preliminary injunction for the pendency of this lawsuit" to "prevent[] [d]efendants from forcing them to violate their sincere religious beliefs ... in order to commence their basic training."[1] Pls.' Mot. for Prelim. Inj. ("P.I. Mot.") [Dkt. #16] at 1.

---

[1] Because Captain Toor has already completed basic training, he does not request preliminary relief. Accordingly, "plaintiffs" refers only to the three recruits for the remainder of this Memorandum Opinion. *See* P.I. Memo. at 1 n.1.

4

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must show that (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Id.* at 20. The court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (citation and quotation marks omitted). Where, as here, "'the Government is the opposing party,'" "the balance of equities and public interest[] factors … 'merge.'" *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

## ANALYSIS

Plaintiffs ask this Court to enjoin the Marine Corps from enforcing their uniform and grooming policies against plaintiffs during recruit training while their suit proceeds. In their view, they are "entitled to a preliminary injunction allowing them to maintain their hair, beards, and religious articles (including the turban)" while in recruit training because "[a]ll four factors … line up in their favor." P.I. Memo. at 18. Defendants disagree, arguing that the Court should deny plaintiffs' request for "mandatory preliminary injunctive relief altering the status quo" because every factor weighs against plaintiffs. Defs.' Memo. in Opp. to Pls.' Mot. for Prelim. Inj. ("Opp.") [Dkt. #35] at 8.

### A. Likelihood of Success on the Merits and Irreparable Harm

Plaintiffs argue that they are likely to succeed on their RFRA, Free Exercise, and Equal Protection claims. *See generally* P.I. Memo. at 20–35. And, they explain, their showing on the first factor also satisfies the irreparable-harm prong because the loss of First Amendment freedoms and rights provided by RFRA constitutes irreparable injury. P.I. Memo. at 36–37. Not surprisingly, defendants disagree on both counts. *See generally* Opp. at 8–26.

**RFRA.** The Religious Freedom Restoration Act provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). "If the Government substantially burdens a person's exercise of religion, under the Act that person is entitled to an exemption from the rule unless the Government 'demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 694–95 (2014) (quoting 42 U.S.C. § 2000bb-1(b)). RFRA applies to the Federal Government and its agencies, *see Hobby Lobby*, 573 U.S. at 695, including the military, *see* 42 U.S.C. § 2000bb-2(1) (defining "government" to include any "branch, department, agency, instrumentality, and official … of the United States"). Under RFRA, the "Government bears the burden of proof on the ultimate question of … constitutionality," such that the plaintiffs at the preliminary-injunction stage "must be deemed likely to prevail unless the Government has shown that respondents' proposed less restrictive alternatives are less effective than" enforcing the challenged policy. *Gonzales*

6

*v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) (internal quotation marks omitted). The statute requires courts to look "beyond broadly formulated interests" and "scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants." *O Centro*, 546 U.S. at 431.

**Free Exercise.** The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. Amend. I. "[L]aws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021). But a law that does "not meet the requirement of being neutral and generally applicable" must satisfy strict scrutiny. *Fulton*, 141 S. Ct. at 1877 (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531–32 (1993)). The "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton*, 141 S. Ct. at 1877 (citing *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1730–32 (2018)). And "[a] law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions'" or "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S. Ct. at 1877 (quoting *Empl. Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 884 (1990)); *see also Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017) ("As the Court put it more than 50 years ago, '[i]t is too late in the day to doubt that the liberties

7

of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege.'" (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963))).

If a law triggers strict scrutiny, it "can survive ... only if it advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Fulton*, 141 S. Ct. at 1881 (quoting *Lukumi*, 508 U.S. at 546). To evaluate whether the government has a compelling interest, the court asks "not whether the [government] has a compelling interest in enforcing its ... policies generally, but whether it has such an interest in denying an exception to [the plaintiff]." *Fulton*, 141 S. Ct. at 1881.

**Equal Protection.** The Due Process Clause of the Fifth Amendment prohibits the federal government from "denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013). If a restriction "disadvantage[s] a suspect class or impinge[s] on the exercise of a fundamental right," it is "subject to strict scrutiny." *Davis v. District of Columbia*, 158 F.3d 1342, 1345 (D.C. Cir. 1998). If a classification "do[es] neither," it is "subject only to review for rationality." *Id.* "[T]he free exercise of religion is a fundamental constitutional right." *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974).

"The loss of First Amendment 'freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Pursuing America's Greatness v. Fed'l Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016) (quoting *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (same). "[T]he same is true of rights afforded under the RFRA, which covers the same types of rights as those protected under the Free

Exercise Clause." *Tyndale House Publishers, Inc. v. Sebelius*, 904 F. Supp. 2d 106, 129 (D.D.C. 2012). A showing of likelihood of success on the merits of a RFRA claim thus also demonstrates sufficiently "that [plaintiffs] will be irreparably injured absent injunctive relief." *Roman Catholic Archbishop of Wash. v. Bowser*, 531 F. Supp. 3d 22, 46 (D.D.C. 2021); *see also Capitol Hill Baptist Church v. Bowser*, 496 F. Supp. 3d 284, 301 (D.D.C. 2020) ("The conclusion that [plaintiff] is likely to succeed on the merits of its RFRA claim therefore also suffices to show that the Church will be irreparably harmed without injunctive relief.").

\* \* \*

Each of plaintiffs' claims under RFRA and the Constitution undoubtedly presents questions of great complexity and immense importance to both plaintiffs and defendants. On the one hand, plaintiffs assert that they are sincerely compelled "to observe Sikh religious practice," a belief that defendants' policies "substantial[ly] burden" by putting plaintiffs "to the choice of giving up their religious beliefs or giving up the opportunity to serve in the Marine Corps altogether" despite being recruits fully qualified to begin their basic training. P.I. Memo. at 21, 23. Indeed, defendants "do[] not contest for purposes of this motion that [p]laintiffs' request is rooted in sincerely held religious beliefs and that conforming to the discipline of uniformity during recruit training will burden those beliefs." Opp. at 2. On the other hand, the Marine Corps has outlined its interests in "mission accomplishment, unit cohesion, and good order and discipline," each of which "depend[s] on the shared identity as 'Marines' that is forged in basic training." Opp. at 9.

9

And, of course, the broader need to protect national security—a goal in which the Marine Corps plays a unique role—is readily apparent.

Addressing the merits of these claims—perhaps most importantly, determining whether defendants have demonstrated that their policies are the least restrictive means of furthering a compelling governmental interest—will require further litigation and rigorous consideration, to say the least.[2] But, as explained below, I need not address these arguments now. Even if plaintiffs have shown a likelihood of success on the merits and irreparable injury, any such showing would be *defeated* by the remaining factors. Indeed, consideration of the public interest alone requires denial of plaintiffs' requested injunctive relief at this preliminary stage. How so?

### B. Balance of Equities and Public Interest

Here, "the [defendants'] harm and the public interest are one and the same, because the government's interest *is* the public interest." *Pursuing America's Greatness*, 831 F.3d at 511; *see also Nken*, 556 U.S. at 435. Broadly, "enforcement of an unconstitutional law is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013). But, of course, there also exists a "public interest in national defense" that is rooted in the military's ability to conduct its training. *Winter*, 555 U.S. at 24.

To say the least, the Marine Corps is "the chief expeditionary force of the United States military, tasked with moving quickly to meet the Nation's security needs in

---

[2] Given the importance of the issues at stake, the Court expects the parties to submit within 10 days of the filing of this Memorandum Opinion a joint proposal for future proceedings to continue this litigation in an efficient and accelerated manner.

dangerous and contingent environments." Opp. at 1. In defendants' view, "a strict discipline of uniformity" is "one essential measure for accomplishing the [Marine] Corps' training project," during which recruits are "strip[ped] … of their individuality and civilian identity[.]" Opp. at 1. United States Marine Corps Colonel Adam L. Jeppe, who serves as the Branch Head of the Manpower Military Policy Branch at the Marine Corps' headquarters in Quantico, Virginia, stated that "[t]he mission of U.S. Marine Corps recruit training is to transform civilians into U.S. Marines through a thorough indoctrination into Marine Corps history, customs and traditions, and by imbuing them with the mental, moral and physical foundation necessary for successful service to [Marine] Corps and country." Decl. of Adam L. Jeppe, Ex. A to Defs.' Memo. in Opp. to Pls.' Mot. for Prelim. Inj. ("Jeppe Decl.") [Dkt. #35-1] at 9. "[E]ach recruit," Colonel Jeppe described, "is stripped of their individuality in order to provide the necessary foundation to be a U.S. Marine and function as a team." Jeppe Decl. at 10. The "uniform" and "grooming standards and conduct" are some of the "tools" used "to instill and maintain this team mindset." Jeppe Decl. at 10–11. And, Colonel Jeppe explained, "[t]his uniformity is vital to the recruit transformation process and an essential building block of the *esprit de corps* and dedication that is the hallmark of the Marine Corps." Jeppe Decl. at 11. Specifically, "uniformity assists the Marine Corps in making Marines because it facilitates the formation of a team mentality, willingness to sacrifice, and an initial inculcation of good order and discipline amongst recruits." Jeppe Decl. at 11.

Colonel Jeppe further stated that "uniformity is a tried and proven Marine Corps training method that fosters the psychological transformation from individual to Marine."

Jeppe Decl. at 11. His declaration outlines the Marine Corps' interest in mission accomplishment, which requires successful training that transforms recruits into Marines. The Marines have thus "credibly alleged" that "training in [the] manner" that would be required by the requested injunction will "pose a serious threat to national security" by disrupting defendants' well-established method of transforming recruits through the discipline of uniformity. *See Winter*, 555 U.S. at 33.

Ensuring successful training and mission accomplishment and protecting national security must be weighed against plaintiffs' asserted interests. There is a "vital public interest in safeguarding religious freedoms protected by the Constitution and by statutes enacted by Congress." *Roman Catholic Archbishop of Wash.*, 531 F. Supp. 3d at 47. Here, plaintiffs contend that defendants' policy presents "a coercive choice to abandon either their religious beliefs or the ability to serve their country as Marines" in violation of the U.S. Constitution and RFRA. P.I. Memo. at 2. And plaintiffs also argue that excluding Sikh Americans from the Marine Corps contravenes defendants' stated "strategic objective of building a diverse force to meet a peer threat." P.I. Memo. at 39 (quoting LtGen David Ottignon & BGen Jason Woodworth, *Diversity, Equity & Inclusion: Why This is Important to the Corps as a Warfighting Organization*, https://perma.cc/9S26-ZQDL).

In this case, however, I find that "the balance of equities and consideration of the overall public interest" favor defendants' position. *See Winter*, 555 U.S. at 26. To be sure, "military interests do not always trump other considerations." *Id.* at 26. But at this preliminary stage—where plaintiffs' requested relief would require the military to conduct basic training in a manner that it credibly alleges will "compromise[]" the Marine Corps'

"national defense mission," Opp. at 27—the public interest clearly favors the defendants. Indeed, given "the burden the preliminary injunction would impose on the [Marine Corps'] ability to conduct ... training exercises" in the military's curated manner, awarding an injunction at this early stage would pose a "documented risk to national security." *Winter*, 555 U.S. at 24, 31 n.5. A risk that the balance of equities and public interest do not support!

## CONCLUSION

For all the foregoing reasons, plaintiffs' [Dkt. #16] Motion for Preliminary Injunction is hereby DENIED. An order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge