UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUKHBIR SINGH TOOR, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Case No. 22-1004 (RJL) |
| | ) |
| DAVID H. BERGER, et al., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION
(December 29, 2022) [Dkt. #65]

In this action brought by current and prospective members of the United States Marine Corps who were denied certain religious accommodations, the first phase of targeted discovery has yielded a motion to compel from plaintiffs. They argue that defendants improperly refused to answer interrogatories after over-counting them against the Court-ordered limit, and that defendants have too narrowly limited the scope of discovery. The Court agrees in part with their first assertion but disagrees with their second. Their motion to compel will therefore be GRANTED IN PART and DENIED IN PART.

BACKGROUND

Plaintiffs Sukhbir Singh Toor, Jaskirat Singh, Aekash Singh, and Milaap Singh Chahal wish to serve in the United States Marine Corps ("Marine Corps" or "Marines") "without having to abandon their faith as devout Sikh Americans." Verified Compl. ("Compl.") [Dkt. #1] ¶ 1. They claim that they are obligated by faith to maintain unshorn hair, to wear a turban, and to keep certain other religious articles on their persons, and they

1

have each sought religious accommodations from the Marine Corps that would allow them to practice their faith while serving. *Id.* ¶¶ 1, 20, 28, 78–79. Three plaintiffs—Singh, Singh, and Chahal—are prospective Marine recruits who have completed the initial tests that qualify them to begin recruit training. *Id.* ¶¶ 27–28. All three sought religious accommodations, which the Marine Corps denied in their entirety during recruit training. *Id.* ¶¶ 31–38. The remaining plaintiff, Toor, has served in the Marine Corps since 2017 and is currently a captain. *Id.* ¶¶ 18–19. After being promoted to captain, he sought a religious accommodation that was granted only in part. *Id.* ¶¶ 19–25. Dissatisfied, the four plaintiffs sued the U.S. Department of Defense and its Secretary, the U.S. Department of the Navy and its Secretary, the Commandant and Assistant Commandant of the Marine Corps, and the Deputy Commandant of Manpower and Reserve Affairs of the Marine Corps (collectively, "defendants"). *Id.* ¶¶ 64–71. They have brought a number of claims under the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb-4, and the First and Fifth Amendments to the U.S. Constitution. Compl. ¶¶ 233–292.

Given the importance of the issues at stake, the Court ordered an accelerated, two-phase discovery schedule, with the first covering plaintiffs' claims concerning Singh, Singh, and Chahal's participation in recruit training ("Phase I Discovery") and the second covering the remaining claims ("Phase II Discovery"). Minute Order (Sept. 22, 2022). Phase I Discovery was to last roughly three months, and the parties were limited to fifteen interrogatories, twenty requests for admission, fifteen requests for production, and eight fact depositions (one of which could be a Rule 30(b)(6) deposition). *Id.* Toward the end of Phase I Discovery, plaintiffs filed a motion to compel, Pls.' Motion to Compel Defs. to

Answer Interrogs. and Produce Docs. ("Mot.") [Dkt. #65], and defendants opposed, Defs.' Opp'n to Pls.' Mot. to Compel ("Opp'n") [Dkt. #70]. Plaintiffs' motion is now ripe for decision.

## DISCUSSION

### I.   Interrogatories

As explained in more detail below, defendants divided plaintiffs' interrogatories too finely for purposes of counting them against the Court-ordered limit on interrogatories. Accordingly, they must furnish responses to Interrogatory Nos. 1–11 to the extent that their refusal to respond was based on plaintiffs' having exceeded the fifteen-interrogatory limit.

Consistent with Federal Rule 33(a)(1), the Court ordered the parties to serve no more than fifteen interrogatories as part of Phase I Discovery. Although that cap departs from the Rule's default limit of twenty-five interrogatories, the *manner* of counting individual interrogatories remains unchanged: "discrete subparts" of an interrogatory are to be counted as new interrogatories. Fed. R. Civ. P. 33(a)(1). That is, "once a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated." *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005) (Facciola, Mag.). On the other hand, multiple parts of an interrogatory are not counted separately, so long as they "are logically or factually subsumed within and necessarily related to the primary question." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 527 (D.D.C. 2006) (Lamberth, J.) (quoting *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006)).

3

To be sure, "this is anything but a bright-line test." *Banks v. Off. of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 10 (D.D.C. 2004) (Facciola, Mag.). While it may be sensible to ask whether subparts of an interrogatory relate to "the primary question," *United States ex rel. Pogue*, 235 F.R.D. at 527, or to "a single topic," *Banks*, 222 F.R.D. at 10, an interrogatory with a "question" or "topic" framed broadly enough could impose "almost no limit to the use of multiple subparts that could qualify as falling within a single interrogatory." *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 196 (E.D. Tex. 2016).

Still, some common themes have emerged that are useful in guiding the Court's analysis. For one, an interrogatory about a type of action or event can count as a single interrogatory even if it gets into the who, what, when, and how of such an action or event. *See Banks*, 222 F.R.D. at 10 (Lawyers "may ask [in a single interrogatory] their opponent to state whether a particular product was tested and then demand to know when the tests occurred, who performed them, how and where they were conducted and the result."); *see also Kline v. Berry*, 287 F.R.D. 75, 79 (D.D.C. 2012) (Kay, Mag.) ("Plaintiff notes a number of times, places, etc. in which she was discriminated against, all of which fall under the same discrete subpart of the interrogatory."); *Willingham*, 226 F.R.D. at 59 (ruling that "asking when Catherine Reeves ('Reeves') started working for the Office of Attorney Personnel Management[,] the number of disciplinary actions she decided since she came to that office[, and] every particular of each disciplinary action Reeves decided" is a single interrogatory). On the other hand, "a demand for information about a certain event and for the documents about it should be counted as two separate interrogatories." *Banks*, 222

F.R.D. at 10; *accord Smith v. Cafe Asia*, 256 F.R.D. 247, 254 (D.D.C. 2009) (Facciola, Mag.); *United States ex rel. Pogue*, 235 F.R.D. at 527.

With those guideposts in mind, defendants have taken the position that eight of plaintiffs' interrogatories—Interrogatory Nos. 1, 2, 3, 6, 11, 12, 13, and 14—contained discrete subparts that amounted to a total of twenty-eight separate interrogatories. Accordingly, they stopped answering after the interrogatory that plaintiffs labeled Interrogatory No. 6, which defendants claim is when plaintiffs reached their fifteen-interrogatory allowance. Unsurprisingly, plaintiffs contend that each of those interrogatories counts as just one.[1]

> ***Interrogatory No. 1.*** This interrogatory states:
>
> Identify each and every grooming and/or uniform accommodation, waiver, and/or exemption granted by any Defendant—whether formally or informally—in the past 15 years, including but not limited to religion or medical beards, tattoos, female hair. For each of the above identified accommodations, waivers, or exemptions, please state the following[:] (a) the name of the individual who received the accommodation, waiver, and/or exemption; (b) the rank and position/assignment of the individual at the time the accommodation, waiver, and/or exemption was granted; (c) the nature of and reason for the accommodation, waiver, and/or exemption; (d) the duration of the accommodation, waiver, and/or exemption; (e) the current rank and assignment of the recipient if the accommodation, waiver, and/or exemption continues to date; (f) the highest rank achieved by the recipient if they are no longer in military service; (g) any reports or data relied upon in the decision making process; and (h) any reasons identified as permitted basis

---

[1] Defendants argue that plaintiffs are foreclosed from obtaining an order to compel responses to Interrogatory Nos. 2, 13, and 14, because plaintiffs did not raise them in their deficiency letter of December 5, 2022. Opp'n at 8. While defendants are correct that plaintiffs did not raise those specific interrogatories in that letter, the record suggests that plaintiffs made a good-faith effort to resolve disputes about interrogatories to which defendants objected as compound. Fed. R. Civ. P. 37(a)(1); *see* Mot. Ex. 9. Plaintiffs are, however, reminded to comply with their obligation to "include a *certification* that [they] ha[ve] in good faith conferred or attempted to confer with" defendants. Fed. R. Civ. P. 37(a)(1) (emphasis added); *see* Standing Order at 2 (Apr. 20, 2022) [Dkt. #20].

>for rescinding the accommodation, and how rescinding would take place (including who must order rescission)[.]

Mot. Ex. 4 at 5–6. Defendants argue this should count as six separate interrogatories. Opp'n at 10; Mot. Ex. 6 at 7. Not quite. For the most part, the interrogatory asks about the particulars of the same topic—the who, what, when, and how of grooming and/or uniform accommodations. Subpart (g), however, is distinct from the other subparts in that it asks about documents instead of information regarding such accommodations, and the wording of the subpart—"reports or data"—presumably includes more general documents that might not pertain to a specific accommodation granted to a particular individual. Interrogatory No. 1 thus counts as two interrogatories.

*Interrogatory No. 2.* This interrogatory states:

>Identify each and every individual who was involved in the accommodation decisions for the Plaintiffs, and any and all written reports/analysis Defendants used to deny the accommodations during recruit training.

Mot. Ex. 4 at 6. Defendants argue this should count as two separate interrogatories. Opp'n at 11; Mot. Ex. 6 at 12. The Court agrees. The interrogatory asks about not only individuals involved in specific accommodation decisions but also "written reports/analysis" that, similar to Interrogatory No. 1, presumably include more general documents that might not pertain to a specific accommodation decision. Interrogatory No. 2 thus counts as two interrogatories.

*Interrogatory No. 3.* This interrogatory states:

>Identify each and every individual over the past 15 years who has gone through Officer Candidate School and/or the Naval Academy who has received grooming waivers or accommodations, including but not limited to

6

religious accommodations, waivers for medical beards, face/neck/hand tattoos waivers, and waivers for hairstyles.

Mot. Ex. 4 at 6. Defendants argue this should count as two separate interrogatories—one for Officer Candidate School and one for the Naval Academy. Opp'n at 12; Mot. Ex. 6 at 16. The Court agrees. As plaintiffs allege in their complaint, the U.S. Naval Academy and Marine Corps Officer Candidate School, while both within the Department of the Navy, are separate institutions subject to distinct accommodation policies. Compl. ¶ 14. It appears plaintiffs intend to show why those differences undermine the Marine Corps' position that its accommodation decisions are the least restrictive means of furthering a compelling government interest. *Id.* ¶¶ 14, 218, 228. Those alleged policy differences convince the Court that Interrogatory No. 3 counts as two interrogatories.

*Interrogatory No. 6.* This interrogatory states:

> Identify each and every training, study, research, report, or other analysis on training Marine Corps drill instructors receive on religious tolerance/ nondiscrimination, including but not limited to who is responsible for creating and providing the training, when the training was created, and how often it is provided.

Mot. Ex. 4 at 6–7. Defendants argue this should count as four separate interrogatories. Opp'n at 13; Mot. Ex. 6 at 20. The Court disagrees. The interrogatory asks about the particulars of the same topic—the who, what, when, and how of training on religious toleration/nondiscrimination. Interrogatory No. 6 thus counts as one interrogatory.

*Interrogatory No. 11.* This interrogatory is very similar to Interrogatory No. 1, except this one focuses on medical beard accommodations:

> Identify each and every medical beard accommodation, waiver, and/or exemption request since the inception of the waiver, including for recruits

during recruit training; and state the following: (a) the name of the individual who received the accommodation, waiver, and/or exemption; (b) the rank and position/assignment of the individual at the time the accommodation, waiver, and/or exemption was granted; the nature of and reason for the accommodation, waiver, and/or exemption; (c) the duration of the accommodation, waiver, and/or exemption; (d) the current rank and assignment of the recipient if the accommodation, waiver, and/or exemption continues to date; (e) the highest rank achieved by the recipient if he or she is no longer in military service; (f) whether the accommodation prevented the individual who received the accommodation, waiver, and/or exemption from wearing a protective face mask or other protective face gear; and (g) any reports or data relied upon in the decision making process.

Mot. Ex. 4 at 7–8. Defendants argue this should count as five separate interrogatories. Opp'n at 14; Mot. Ex. 6 at 27. Not quite. Similar to Interrogatory No. 1, this interrogatory's Subpart (g) is distinct from the other subparts, but the other subparts ask about the particulars of the same topic. Interrogatory No. 11 thus counts as two interrogatories.

*Interrogatory No. 12.* This interrogatory is also similar to Interrogatory No. 1, except this one focuses on tattoo accommodations:

Identify each and every tattoo accommodation, waiver, and/or exemption request (including hand/neck/face/tattoos) since the inception of the waiver, including for recruits during basic training; and state the following: (a) the name of the individual who received the accommodation, waiver, and/or exemption; (b) the rank and position/assignment of the individual at the time the accommodation, waiver, and/or exemption was granted; (c) the nature of and reason for the accommodation, waiver, and/or exemption; the duration of the accommodation, waiver, and/or exemption; (d) the current rank and assignment of the recipient if the accommodation, waiver, and/or exemption continues to date; and (e) the highest rank achieved by the recipient if he or she is no longer in military service; and (f) any reports or data relied upon in the decision making process.

Mot. Ex. 4 at 8. Defendants argue this should count as four separate interrogatories. Opp'n at 15; Mot. Ex. 6 at 28. Not quite. Similar to Interrogatory Nos. 1 and 11, this

8

interrogatory's Subpart (f) is distinct from the other subparts, but the other subparts ask about the particulars of the same topic. Interrogatory No. 12 thus counts as two interrogatories.

> ***Interrogatory No. 13.*** This interrogatory states:
>
> Identify the time period when current uniform and grooming standards at Marine Corps recruit training were first implemented and identify every complaint, study, research, report, or other analysis that relates to its implementation.

Mot. Ex. 4 at 8. Defendants argue this should count as two separate interrogatories. Opp'n at 16; Mot. Ex. 6 at 30. The Court agrees. The interrogatory asks not only about the time period when uniform and grooming standards were first implemented but also about documents—"every complaint, study, research, report, or other analysis"—relating to their implementation, which are to be counted separately. *Banks*, 222 F.R.D. at 10. Interrogatory No. 13 thus counts as two interrogatories.

> ***Interrogatory No. 14.*** This interrogatory states:
>
> Identify any time period when the uniform and grooming standards at basic training differed from the current standards and state the following: (a) how they differed; and (b) describe any reports or data used in consideration of implementing those standards.

Mot. Ex. 4 at 9. Defendants argue this should count as three separate interrogatories. Opp'n at 17; Mot. Ex. 6 at 31. Not quite. The interrogatory starts by asking about the particulars of the same topic—the timing of different uniform and grooming standards and the nature of those differences—but it goes on to ask about reports and data, which are to be counted separately. *Banks*, 222 F.R.D. at 10. Interrogatory No. 14 thus counts as two interrogatories.

9

Plaintiffs reached their maximum allowance of fifteen interrogatories through Interrogatory No. 11 (i.e., with Interrogatory Nos. 1, 2, 3, and 11 counting as two each), not Interrogatory No. 6, as defendants argue. Thus, to the extent that defendants did not respond to Interrogatory Nos. 7–11 on the basis that they exceeded the Court-ordered limit, plaintiffs' motion to compel will be granted. The motion is denied, however, with respect to Interrogatory Nos. 12–14.

## II.     Scope of Discovery

Plaintiffs also argue that defendants improperly limited the scope of discovery to exclude documents about other military services and those from "every Marine, command, and office in the United States Marine Corps." Mot. at 13–16. Neither argument has merit.

Federal Rule 26(b)(1) allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Wall v. Reliance Standard Life Ins. Co.*, 341 F.R.D. 1, 5 (D.D.C. 2022) (Harvey, Mag.) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The proportionality inquiry involves the balancing of six factors: "(1) the importance of the issues at stake in this action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." *Cherokee Nation v. U.S. Dep't of the Interior*, 531 F. Supp. 3d 87, 100 (D.D.C. 2021) (Faruqui, Mag.); Fed. R. Civ. P. 26(b)(1). The party

seeking discovery bears the burden of showing that the information sought is relevant. *Wall*, 341 F.R.D. at 6. Once it has done so, the burden shifts to the objecting party to show why discovery should not be permitted. *Id.*

As to discovery about other military services, defendants do not meaningfully dispute plaintiffs' argument that such evidence is relevant. Mot. at 13–15; Opp'n at 6–8. That discovery is indeed relevant, insofar as plaintiffs seek to point to other services' accommodations as evidence that the Marine Corps' policies are not the least restrictive means of furthering a compelling government interest. Compl. ¶¶ 14, 218, 228.

But, on balance, such discovery is far from proportional to the needs of the case. True, the first proportionality factor tilts in favor of broader discovery: the issues at stake in this action are incredibly important, pitting individuals' practices as part of their deeply held religious beliefs against the federal government's national security interests. *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (referring to litigation that "seeks to vindicate vitally important personal or public values"). Other relevant factors, however, weigh strongly against other-service discovery.

Plaintiffs make clear they are challenging specific accommodation decisions made only by the Marine Corps, not any other service of the military. Compl. ¶¶ 101–122, 137–149, 161–169, 185–205. Thus, as to the fifth factor, the importance of discovery about other services' accommodation decisions in resolving the issues of the case is nearly zero. *Cf. Lamaute v. Power*, 339 F.R.D. 29, 37 (D.D.C. 2021) (Lamberth, J.) ("Communications by individuals who had no connection to the decision-making process . . . would add little practical value to resolving this case."). And to the extent that plaintiffs seek to introduce

11

evidence supporting their allegations that other services have enacted policies with more accommodations—and thus that the Marine Corps' accommodation decisions are not the least restrictive means of furthering a compelling government interest—plaintiffs have just as much access to those publicly available policies as do defendants, meaning the third factor also weighs against compelling production. *See* Pls.' Mem. in Supp. of Appl. for Prelim. Inj. [Dkt. #16-1] at 31 (citing hyperlinked and attached policies from other services); Compl. ¶¶ 13–14 (allegations regarding other services' policies). Likewise, as to the sixth factor, the burden or expense of the proposed discovery outweighs its likely benefit. Searching for and producing discovery from six other military services would multiply sixfold the burdens and expenses, without any noticeable benefit. *Cf. Wall*, 341 F.R.D. at 9 (production of ten years' worth of long-term disability insurance claims from individuals other than plaintiff not worth "the substantial time and expense"). Defendants have thus met their burden of showing that discovery from other military services should not be permitted.

Separately, plaintiffs take issue with defendants' objection to certain document requests insofar as they demand "a burdensome search of every Marine, command, and office in the United States Marine Corps"—a sensible objection, in my opinion. Mot. at 15–16; *see* Mot. Ex. 7 at 9–10, 14, 17, 20, 22; *cf. Lurensky v. Wellinghoff*, 258 F.R.D. 27, 31 (D.D.C. 2009) (Facciola, Mag.) ("[I]n a Title VII case, . . . requests must be reasonably limited temporally and to the appropriate 'employment unit.'"). Plaintiffs then suggest that the parties can and should work together "to identify a mutually agreeable search protocol and list of relevant custodians"—a sensible suggestion, in my opinion. Mot. at 16. It is

unclear, frankly, what exactly plaintiffs want the Court to order. Their motion on this front is certainly not "both limited and specific," as was ordered of Phase I Discovery motions. Minute Order (Sept. 22, 2022). It will therefore be denied on this "issue."

## CONCLUSION

For all the foregoing reasons, plaintiffs' Motion to Compel Defendants to Answer Interrogatories and Produce Documents [Dkt. #65] will be GRANTED IN PART and DENIED IN PART. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge